**RESHMA KAMATH**, Cal. Bar No. 333800
700 El Camino Real, Suite 120, #1084
Menlo Park, California 94025, United States
Ph.: 650 257 0719, E.: reshmakamath2021@gmail.com
*In Propria Persona*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RESHMA KAMATH,<br><br>     Plaintiff,<br><br><br>    v.<br><br>ANGIE MUELEMAN, WILLIAM ALSUP, ROSE MAHER, THOMAS HIXSON, JAMES LI, LILAW, INC., DYLAN WISEMAN, BUCHALTER, APC, YVONNE GONZALEZ-ROGERS, JEFFREY WHITE, CALIFORNIA NORTHERN DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA STANDING COMMITTEE ON PROFESSIONAL RESPONSIBILITY, NINTH CIRCUIT COURT OF APPEALS, AND, DOES 1-10, INCLUSIVE,<br><br><br>    Defendants | Case No.: **5:23-cv-06494-VKD**<br><br>**EXHIBIT C AGAINST JUDICIAL OFFICER YVONNE GONZALEZ ROGERS' JUDICIAL IMPROPREITY; LINKAGES TO SECURITIES AT VANGUARD, AJAX, AND MCKINSEY; AND RULING IN HER FAVOR WITHOUT INDEPENDENT THIRD-PARTY NEUTRAL; IN SUPPORT OF THE COMPLAINT FOR:**<br><br>I.     **INJUNCTIVE RELIEF**<br>II.    **DEFAMATION PER SE-LIBEL**<br>III.   **RACIAL DISCRIMINATION UNDER 42 U.S.C. SECTION 1983**<br>IV.   **GENDER DISCRIMINATION UNDER 42 U.S.C. SECTION 1983**<br>V.    **DECLARATORY RELIEF**<br>VI.   **DEFAMATION PER SE–SLANDER**<br>VII.  **NEGLIGENT HIRING, RETENTION, SUPERVISION, AND TRAINING.**<br><br><br>**DEMAND FOR JURY TRIAL** |

**RESHMA KAMATH**
WWW.MYINSTALAWYER.COM

# EXHIBIT C


PATENT OFFICE EXAM
BENEFIT FROM THE PLI EXPERIENCE
RECEIVE A 10% DISCOUNT ON PLI'S PATENT OFFICE EXAM COURSE
Register Now


IPWatchdog®

# Cellspin Says Judge Gonzalez Rogers' Financial Ties to Silicon Valley Require Recusal

**STEVE BRACHMANN**

JANUARY 31, 2023, 04:15 PM     💬 2

"It simply cannot be objectively reconciled that an Article III judge's wife's holding of $4,687.99 Cisco stock can nullify [that judge's] judgment but Judge Gonzalez Rogers owning millions of dollars in defendants' stock would not." – Cellspin Soft

---

Earlier this month, patent owner Cellspin Soft filed a motion for recusal under 28 U.S.C. § 455 seeking the vacatur of a summary judgment order entered in the Northern District of California by U.S. District Judge Yvonne Gonzalez Rogers releasing several defendants from infringement liability, including Fitbit. Cellspin Soft's motion points to several financial interests between Judge Gonzalez Rogers and Fitbit's parent company Google, including business relationships developed by Judge Gonzalez Rogers' husband through McKinsey & Company, as requiring recusal under Section 455, a statute that was recently raised by a petition for writ denied last December by the U.S. Supreme Court.

Our website uses cookies to provide you with a better experience. Read our privacy policy for more information.     ACCEPT AND CLOSE

## Section 455(f) Requires a Judge to Be Completely Dispossessed of Financial Interest



As Cellspin's motion notes, Section 455(a) requires a judge to disqualify herself in any proceeding in which the judge's impartiality might reasonably be questioned. While Section 455(f) gives judges an opportunity to divest the financial interest, such divestitures require the judge to be dispossessed of the financial interest entirely under the U.S. Court of Appeals for the Federal Circuit's 2022 decision in _Centripetal Networks, Inc. v. Cisco Systems, Inc._ Analyzing the statutory language of Section 455, the Federal Circuit concluded that "selling or donating the [financial interest] is the only cure envisioned under [Section] 455(f)."

Among Judge Gonzalez Rogers' financial interests in Google include investments in Vanguard Fund holdings totaling anywhere from $9.4 million to $43.6 million, according to a 2020 financial disclosure filed by Gonzalez Rogers. Index funds at Vanguard into which Gonzalez Rogers has invested hold significant positions in Google; other defendants in Cellspin Soft patent cases including Nike and Under Armour; Samsung, which manufactures watches that contain Under Armour's accused instrumentalities; and Apple, which manufactures watches that contain Nike's accused instrumentalities. Unlike mutual funds, Vanguard index funds held by Gonzalez Rogers are passively managed and hold securities in companies according to their proportional weight in the index.

Because these funds are passively managed, Cellspin Soft argues that these investments by Judge Gonzalez Rogers do not meet the exception for common investment funds codified at Section 455(d)(4)(i). That exception requires that a judge not take an active management role in the investment fund at issue. "If nobody is managing the fund, then everybody is managing it (including Judge Gonzalez Rogers), because everyone knows what stocks are part of the Index fund (and especially the top ten holdings of the index fund)," Cellspin Soft argues. Citing back to the landmark rule laid down by the Federal Circuit in _Centripetal Networks_, Cellspin Soft asserts

Our website uses cookies to provide you with a better experience. Read our privacy policy for more information.    ACCEPT AND CLOSE

## Additional Financial Interests Stemming from Spouse's Business Relationships

Cellspin Soft's motion for recusal also traces business relationships between Google and McKinsey & Company, the latter of which Judge Gonzalez Rogers' husband serves as senior partner. McKinsey and Google have partnered to improve refinery performance for a McKinsey client in the oil and gas industry, and Cellspin Soft's motion points out that Matt Rogers works as a consultant in McKinsey's energy group. McKinsey has also used Google Cloud services and architecture to aid an energy sector client in addressing power outages associated with forest fires in California. Cellspin Soft alleges that the substantial business ties between Google and McKinsey creates an objective appearance that Judge Gonzalez Rogers would be biased in favor of Google due to her husband's business ties.

Further conflicts of interest arise from Matt Rogers' position as operating partner at Ajax Strategies, a private equity firm that operates several startups receiving significant financial support from Google. Cellspin Soft's motion for recusal includes several exhibits demonstrating that global imaging company Planet Labs, hydropower developer Natel Energy, and vegan dairy alternative producer Ripple Foods each raised millions in seed funding from Google while those startups were overseen by Ajax Strategies.

The motion also details the use of Google software platforms in five other companies operated by Ajax including electric scooter sharing company Lime, which uses Google Maps to operate its micromobility service; distributed energy software company Voltus, which leverages Google Nest for smart home thermostat solutions; transportation analytics company Streetlight Data, which uses Google Cloud services to offer data-as-a-service solutions to government entities; geospatial software engineering company Descartes Labs, which uses Google Cloud to process satellite imagery for famine prediction; and regenerative agriculture company Regrow, which uses several Google platforms to analyze observable earth data to reduce climate change impacts.

## No 'De Minimis' Exception for Recusal Based on Financial Interest

Section 455(b)(4), which governs a judge's recusal obligations in light of the financial interests held by the judge or the judge's spouse, provides "a bright line rule as to disqualification based on a known financial interest in a party" according to the U.S. Court of Appeals for the Second Circuit's 2003 ruling in *Chase Manhattan Bank v. Affiliated FM Insurance Co.* While Section 455(f)

Our website uses cookies to provide you with a better experience. Read our privacy policy for more information.       ACCEPT AND CLOSE

Cellspin Says Judge Gonzalez Rogers' Financial Ties to Silicon Valley Require Recusal

exception for recusal based on financial interest," and that her husband's position at McKinsey & Company would likely require the judge's recusal from "[m]atters relating to McKinsey and, more broadly, to my husband's primary clients."

Finally, Cellspin Soft notes that Judge Gonzalez Rogers' 2020 financial disclosure statement includes an investment of between $5 million and $25 million in "McKinsey & Company Special Situations Aggressive Long-Term." This opaque investment could include major investments in Big Tech firms involved in the case, Cellspin Soft alleges, and the patent owner argued that a U.S. Office of Management and Budget (OMB) employee was required to divest this exact same type of investment during her confirmation proceedings in the U.S. Senate.

## Judge Gonzalez Rogers' SJ Rulings Fail *Liljeberg*'s Harmless Error Test

While mandatory recusal does not require mandatory vacatur, Cellspin Soft contends that Judge Gonzalez Rogers failure to disqualify herself was not harmless error under the U.S. Supreme Court's test from *Liljeberg v. Health Services Acquisition Corp.* (1988) In the present case, Cellspin Soft argues that plain injustice from Judge Gonzalez Rogers summary judgment orders, which allegedly were not decided by an objective factfinder, and public distrust resulting from the judge's ties to Silicon Valley companies leading to favorable decisions for tech companies, are both factors showing that Judge Gonzalez Rogers' failure to recuse herself was not harmless. This error also spreads to other Cellspin Soft cases on Judge Gonzalez Rogers' docket as the motion for recusal cites 20 footnotes throughout her summary judgment ruling where the judge noted that issues were being decided under the same reasoning from cases involving Fitbit and other Google business partners.

Cellspin Soft's motion for Judge Gonzalez Rogers' recusal and vacatur of her summary judgment order comes about a month and a half after the Supreme Court denied a petition for writ of certiorari on very similar issues in *Centripetal Networks*. Centripetal, which had a multi-billion infringement verdict wiped out for a judge's failure to recuse, had argued on appeal that the Federal Circuit's decision "gave short shrift" to the district court's concerns that the sale of Cisco stock held by the judge's wife, an investment that was only discovered after the judge had already a full draft opinion on the issues presented during bench trial with a ruling unfavorable to Cisco, would itself create an improper appearance of bias. In proceedings at the Patent Trial and Appeal Board (PTAB), an administrative patent judge (APJ) recused himself in early January of this year after Centripetal Networks filed a motion for recusal noting the APJs investments in Cisco,

Our website uses cookies to provide you with a better experience. Read our privacy policy for more information.     ACCEPT AND CLOSE

Case 5:23-cv-06494-PCP Document 9 Filed 02/04/24 Page 7 of 50

*Image Source: Deposit Photos*
*Image ID: 168692948*
*Author: threecvet.gmail.com*



## STEVE BRACHMANN

Steve Brachmann is a graduate of the University at Buffalo School of Law, having earned his Juris Doctor in May 2022 and served as the President of the Intellectual Property [...see more]

> **Warning & Disclaimer:** The pages, articles and comments on IPWatchdog.com do not constitute legal advice, nor do they create any attorney-client relationship. The articles published express the personal opinion and views of the author as of the time of publication and should not be attributed to the author's employer, clients or the sponsors of IPWatchdog.com.



**Eileen McDermott**
February 1, 2023 08:20 am



View Comments

At IPWatchdog.com our focus is on the business, policy and substance of patents and other forms of intellectual property. Today IPWatchdog is recognized as the leading sources for news and information in the patent and innovation industries.

Our website uses cookies to provide you with a better experience. Read our privacy policy for more information.     ACCEPT AND CLOSE

Images on IPWatchdog Primarily
Provided by



Our website uses cookies to provide you with a better experience. Read our privacy policy for more

information.      ACCEPT AND CLOSE



IPWatchdog®

## Judge Calls Cellspin's Motion for Recusal in Infringement Case 'Divorced from the Law and Facts'

**ALEC PRONK**
FEBRUARY 22, 2023, 12:34 PM   💬 1

> "The pending motion lacks any substantive basis tethered to law or fact to support recusal or vacatur." – Judge Gonzalez Rogers

Last week, U.S. District Judge Yvonne Gonzalez Rogers issued an order denying Cellspin Soft's motion for recusal that sought the vacatur of a summary judgment that released Fitbit, Nike, Under Armour, and others from patent infringement liability.



Judge Gonzalez Rogers wrote "in short, plaintiff's attack on the integrity of the judiciary... not only demonstrates a measure of desperation, but is divorced from the law

Our website uses cookies to provide you with a better experience. Read our privacy policy for more information.    ACCEPT AND CLOSE

Cellspin Soft attempted to point out business relationships between Gonzalez Rogers's husband and Google, Fitbit's parent company. The company claimed that these connections required recusal under Section 455.

The company also pointed to investments disclosed by the judge that have financial interests in other companies party to the lawsuit, including Nike and Samsung.

However, the district judge found many reasons to deny the motion, including a lack of jurisdiction and timeliness. Judge Gonzalez Rogers went into detail in addressing the allegations in order to "promote transparency and maintain the Court's credibility in light of plaintiff's sweeping assertions."

## Addressing Accusations

Cellspin Soft made three allegations that it believed were cause for Judge Gonzalez Rogers to recuse herself from the case, thus vacating the previous summary judgment against the company. The three allegations are related to the judge's husband's work and financial interests.

The first allegation was that Judge Gonzalez Rogers' husband worked for the consulting firm McKinsey as a Senior Partner consulting in the oil and gas sector. Cellspin Soft drew a connection between McKinsey and Google assisting clients in this sector, suggesting this relationship would cause the district judge to be biased in favor of Google.

In response to this accusation, Judge Gonzalez Rogers wrote, "plaintiff's evolving theory for recusal is nothing but unsubstantiated speculation divorced from any evidence."

Secondly, Cellspin alleged that the judge's husband's work as Operations Partner at Ajax, where he has overseen the operations of startup companies, is a conflict of interest for Gonzalez Rogers because the projects received funding from Google, and other operations were done in collaboration with the tech giant.

The district judge ruled that Cellspin misrepresented her husband's involvement in the company by stating that he has equity in the company when his role is as a contractor.

"This argument is frivolous, lacks any merit, and makes substantial misrepresentations of the record provided," wrote Gonzales Rogers

Our website uses cookies to provide you with a better experience. Read our privacy policy for more information.      ACCEPT AND CLOSE

Vanguard funds, according to a 2020 financial disclosure.

However, all three funds are managed by third parties and consist of a wide range of companies across the stock market, making them fall under a safe harbor exemption, said the judge.

"Plaintiff has not proffered any legal authority to support its illusory assertion that the investments at issue here are somehow not exempt" from safe harbor, she added.

For all these reasons, Gonzalez Rogers ruled "the pending motion lacks any substantive basis tethered to law or fact to support recusal or vacatur."

## Background

Prior to the ruling, both Cellspin and one of the defendants filed briefs with the court. Fitbit filed a response brief opposing the motion for recusal in early February, and in response, Cellspin filed a reply in support of recusal on February 10.

Judge Gonzales Rogers used many of the same arguments that Fitbit used in its response to dismiss the brief. Ultimately, the district judge agreed with Fitbit when the company wrote in its brief, "Cellspin's strategic exploitation of the federal judiciary's ethical obligations is prohibited, and its recusal motion must be denied" based on the timeliness requirement for recusal motions.

In its reply brief, Cellspin claimed that it filed the motion for recusal promptly after it uncovered the alleged "problematic financial relationships."

## What Happens Now?

In a statement to *IPWatchdog*, Bobby Singh, founder of Cellspin Soft, said the company is planning to appeal the district court's ruling.

Singh said that several aspects of the ruling provided new information to Cellspin soft, including that the judge's husband is on the board of Natel Energy and is a board advisor to Ojjo. Both companies are connected to Ajax, but Ojjo was not mentioned in Cellspin's motion and Gonzalez Rogers acknowledged the affiliation in her Order, writing in a footnote that the company to which her husband is a board advisor is Ojjo, but that "the undersigned knows of no affiliations with Google, Ojjo, and other parties in this case that would justify recusal."

Additionally, Gonzalez Rogers wrote that Cellspin misrepresented an article about Natel Energy

Our website uses cookies to provide you with a better experience. Read our privacy policy for more information.     ACCEPT AND CLOSE

Singh also took exception with Gonzalez Rogers classifying a Special Situations Fund managed by McKinsey as being "like a mutual fund," since the fund's <u>own website explains</u> that the majority of its assets under management "are managed with full discretion by third-party managers (i.e., hedge funds, private equity, and other alternative investment managers)."

Singh told *IPWatchdog*, "Cellspin does not think that federal judges get an exception for investing in hedge funds or private equity. The only exception is run of the mill mutual funds."

*Image Source: Deposit Photos*
*Image ID:510374994*
*Copyright:witsarut1803.gmail.com*



**ALEC PRONK**

Alec is a freelance journalist and editor who has covered a broad range of topics ranging from international law to US foreign policy. He holds a master's degree in political [<u>...see more</u>]

**Warning & Disclaimer:** The pages, articles and comments on IPWatchdog.com do not constitute legal advice, nor do they create any attorney-client relationship. The articles published express the personal opinion and views of the author as of the time of publication and should not be attributed to the author's employer, clients or the sponsors of IPWatchdog.com.



**Model 101**

February 23, 2023 01:59 pm

She's a crook, plain and simple.

Cmon!!!



Our website uses cookies to provide you with a better experience. Read our <u>privacy policy</u> for more information.      ACCEPT AND CLOSE

At IPWatchdog.com our focus is on the business, policy and substance of patents and other forms of intellectual property. Today IPWatchdog is recognized as the leading sources for news and information in the patent and innovation industries.

© 1999 – 2024 IPWatchdog, Inc.

Terms & Conditions of Use │ Privacy Policy

Images on IPWatchdog Primarily
Provided by



Our website uses cookies to provide you with a better experience. Read our privacy policy for more information.        ACCEPT AND CLOSE

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CELLSPIN SOFT, INC.,** | **ORDER WITHDRAWING REFERENCE** |
| Plaintiff, | |
| vs. | |
| **FITBIT, INC.,** | Case No. 4:17-CV-05928-YGR |
| ------------------------------------------- | |
| **MOOV, INC.,** | Case No. 4:17-CV-05929-YGR |
| ------------------------------------------- | |
| **NIKE, INC.,** | Case No. 4:17-CV-05931-YGR |
| ------------------------------------------- | |
| **UNDER ARMOUR, INC.,** | Case No. 4:17-CV-05932-YGR |
| ------------------------------------------- | |
| **FOSSIL GROUP, ET AL.,** | Case No. 4:17-CV-05933-YGR |
| ------------------------------------------- | |
| **GARMIN INTERN., INC., ET AL.,** | Case No. 4:17-CV-05934-YGR |
| ------------------------------------------- | |
| **NIKON AMERICAS, INC. ET AL.,** | Case No. 4:17-CV-05936-YGR |
| Defendants. | |

On Friday, January 20, 2023, Cellspin Soft, Inc. filed a Motion for judicial recusal pursuant to 28 U.S.C. sections 144 & 455.  (*See* Dkt. No. 366.)  On the same day, the Court referred the motion.  Upon further reflection, and to promote transparency, the Court **WITHDRAWS** the reference.

**IT IS SO ORDERED.**

Dated: January 23, 2023

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CELLSPIN SOFT, INC.,** | **ORDER REFERRING MOTION FOR JUDICIAL RECUSAL** |
| Plaintiff, | |
| vs. | |
| **FITBIT, INC.,** | Case No. 4:17-CV-05928-YGR |
| **MOOV, INC.,** | Case No. 4:17-CV-05929-YGR |
| **NIKE, INC.,** | Case No. 4:17-CV-05931-YGR |
| **UNDER ARMOUR, INC.,** | Case No. 4:17-CV-05932-YGR |
| **FOSSIL GROUP, ET AL.,** | Case No. 4:17-CV-05933-YGR |
| **GARMIN INTERN., INC., ET AL.,** | Case No. 4:17-CV-05934-YGR |
| **NIKON AMERICAS, INC. ET AL.,** | Case No. 4:17-CV-05936-YGR |
| Defendants. | |

On January 20, 2023, Cellspin Soft, Inc. filed a Motion for judicial recusal pursuant to 28 U.S.C. sections 144 & 455.  (*See* Dkt. No. 366.)

In accordance with 28 U.S.C. section 144 and Local Rule 3-14, the undersigned **REFERS** the Motion for Recusal for assignment to, and decision by, another judge of this court.

**IT IS SO ORDERED.**

Dated: 1/20/23

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

Randall T. Garteiser (CA State Bar No. 231821)
   rgarteiser@ghiplaw.com
Christopher A. Honea (CA State Bar No. 232473)
   chonea@ghiplaw.com
M. Scott Fuller (TX State Bar No. 24036607)
   sfuller@ghiplaw.com
GARTEISER HONEA
95 Third St., Floor 2, San Francisco, CA 94103
119 W Ferguson, Tyler, TX 75702
Tel: (888) 908-4400

Attorneys For Plaintiff,
CELLSPIN SOFT INC.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CELLSPIN SOFT, INC., | **REPLY IN SUPPORT OF MOTION FOR RECUSAL PURSUANT TO SECTION 455 (Dkt. No. 366)[1]** |
| Plaintiff | |
| v. | |
| FITBIT LLC., | Case No. 4:17-CV-05928-YGR |
| MOOV, INC., | Case No. 4:17-CV-05929-YGR |
| NIKE, INC., | Case No. 4:17-CV-05931-YGR |
| UNDER ARMOUR, INC., | Case No. 4:17-CV-05932-YGR |
| FOSSIL GROUP, ET AL., | Case No. 4:17-CV-05933-YGR |
| GARMIN INTERN., INC., ET AL., | Case No. 4:17-CV-05934-YGR |
| NIKON AMERICAS, INC., | Case No. 4:17-CV-05936-YGR |
| Defendants. | |

---

[1] All docket references are to *Cellspin Soft, Inc. v. Fitbit LLC*, 4:17-cv-05928 (N.D. Cal. 2017)

# **TABLE OF CONTENTS**

I.     THE DISTRICT COURT HAS JURISDICTION. ............................................. 3

II.    CELLSPIN'S MOTION PURSUANT TO 28 U.S.C. § 455 IS TIMELY ...................................... 3

III.   PERCEPTION OF NO BIAS AND NO FINANCIAL INTEREST IN PARTIES IS PARAMOUNT ........................................................................................... 6

IV.    NEW LAW ON ARTICLE III DISCLOSURES AND JUDGE GONZALEZ ROGERS PUBLIC DISCLOSURES. ........................................................................... 8

V.     GOOGLE FUNDING OF AJAX STRATEGIES STARTUPS AND PARTNERSHIP REQUIRES RECUSAL AND VACATUR. ................................................... 10

VI.    MCKINSEY AND GOOGLE PARTNERSHIP JUSTIFY RECUSAL AND VACATUR. ........ 12

VII.   MILLIONS INVESTED IN INDEX FUNDS JUSTIFY RECUSAL AND VACATUR FOR THESE PARTIES. ............................................................................... 12

VIII.  DEFENDANT SPECIFIC RESPONSES ............................................................... 14

# TABLE OF AUTHORITIES

## Cases

*Centripetal Networks, Inc. v. Cisco Systems, Inc.*, 38 F.4th 1025 (Fed. Cir. 2022) ......................... passim

*Gilda Industries, Inc. v. U.S.,* 511 F.3d 1348, 1350 (Fed. Cir. 2008) ......................................... 3

*Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56 (1982) ................................................ 3

*Kern Oil & Refining Co. v. Tenneco Oil Co.,* 840 F.2d 730 (9th Cir. 1988) ................................ 3

*Key Pharms., Inc. v. Mylan Labs., Inc.*, 24 F.Supp.2d 480 (W.D.Pa.1998) ................................ 7

*Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847 (1988*)*..................................... 5, 15

*Liteky v. United States*, 510 U.S. 540 (1994) ........................................................................... 6

*Memmer v. U.S.,* 2017 WL 2920032 (Fed. Cl. 2017) ................................................................. 3

*Preston v. United States*, 923 F.2d 731 (9th Cir. 1991) ............................................................ 5

*Scott v. Younger*, 739 F.2d 1464 (9th Cir.1984) ...................................................................... 3

*Shell Oil Co. v. U.S.*, 672 F.3d 1283 (Fed. Cir. 2012) ....................................................... 5, 7, 15

*Williams v. Woodford,* 384 F.3d 567 (9th Cir. 2004).................................................................. 3

## Statutes

18 U.S.C. § 208 ........................................................................................................................ 8

28 U.S.C. § 455 ............................................................................................................... passim

Courthouse Ethics and Transparency Act, Pub. L. No. 117-125, 136 Stat 1205 (2022) ........................ 9

Public Law 117-125 (the Courthouse Ethics and Transparency Act)................................................. 9

## Other Authorities

168 Cong. Rec. H4522 (daily ed. Apr. 27, 2022) (statement of Rep. Hakeem Jeffries)............................ 8

## I.    The District Court Has Jurisdiction.

Defendants contend that the Court lacks jurisdiction to rule on this Motion as Cellspin is relying upon Rule 60 for vacatur.  The Federal Circuit cannot weigh in on the recusal issue under Section 455 related to Judge Gonzalez Rogers until this Court first provides transparency as it has indicated it intends to do.  *See* Dkt. No. 368 ("Upon further reflection, and to promote transparency, the Court WITHDRAWS the reference").  To clarify, Cellspin did not move for recusal under both Section 144 and 455 in its Motion, only Section 455. *See* Dkt. No. 368 (*citing* Dkt. No. 366 ("Motion")).  So, contrary to Defendants' argument, the District Court absolutely has authority to maintain jurisdiction to rule on this motion just like it is doing for the other post-notice of appeal motions filed by Defendants.  *See e.g. Williams v. Woodford,* 384 F.3d 567, 586 (9th Cir. 2004) (*citing Scott v. Younger*, 739 F.2d 1464, 1466 (9th Cir.1984).  And should the Court decide to recuse itself from this case, then Cellspin would simply notify the Federal Circuit of the vacatur.  There is only one consolidated appeal for all six (6) Defendants, akin to the District Court's one summary judgment order. *See Kern Oil & Refining Co. v. Tenneco Oil Co.,* 840 F.2d 730, 734 (9th Cir. 1988) (A District Court retaining jurisdiction to vacate pursuant to Rule 60 is a "judge-made doctrine designed to avoid the confusion and waste of time that might flow from putting the same issues before two courts at the same time").  Further, Cellspin's timely appeal only divested the District Court of jurisdiction over those specific matters related to the appeal. *See Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58 (1982); *Gilda Industries, Inc. v. U.S.,* 511 F.3d 1348, 1350 (Fed. Cir. 2008).

Because the facts and argument raised by Cellspin in its Motion are not duplicative of the infringement issues which are the subject of the appeal, the District Court retains jurisdiction. *See Memmer v. U.S.,* 2017 WL 2920032 at *1-2 (Fed. Cl. 2017) (continuing jurisdiction over claims notwithstanding pending appeal concerning different claims).

## II.    Cellspin's Motion Pursuant To 28 U.S.C. § 455 Is Timely

Before Cellspin filed its motion for recusal, it did **not** have access to all the factual information on which the motion is based.  Cellspin would have no way of knowing in

February of 2021 (the approximate timeframe of Google's acquisition of Fitbit) that Matt Rogers would be a partner at Ajax Strategies in April 2022 and would be operating three (3) Google funded startups and operating five (5) companies that have partnerships with Google. Cellspin would have no way of knowing in February of 2021 or in February of 2022 if Judge Gonzalez Rogers has sold or still holds her substantial 2020 Vanguard Index Fund investments. Neither Google nor Cellspin can show that Judge Gonzalez Rogers has no financial interest in Google since the Fitbit acquisition. This is because Judge Gonzalez Rogers has not filed any financial disclosures for 2021 or 2022.

To the best of Cellspin's knowledge, the publicly available webpages available at Dkt. 371-4 and 371-2 evidencing the fact that McKinsey was selling Google services to its oil and gas clients did not exist in 2021. Indeed, even Google has not asserted that they existed in 2021 (*See* Dkt. 371-4). Nor can it, given that the Internet Archive has no record of the referenced page appearing prior to 2022.[1]

Moreover, it is squarely each individual judge's responsibility to be abreast of the business dealings of their spouse and immediate family, including all potential conflicts of interest. Every party is not required to independently perform extensive background research. Section 455(c) provides that "[a] judge should inform himself about his personal and fiduciary financial interests and make a reasonable effort to inform himself about the personal financial interests of his spouse and minor children residing in his household." This was exactly the Judicial Conference Committee's concern in Advisory Opinion 110. As such, Judge Gonzalez Rogers should have informed *all parties* when her husband joined Venture Capital firm Ajax Strategies in April 2022. The fact that Cellspin discovered this in November 2022 simply illustrates Cellspin's diligence in this regard and does not absolve the District Court of its own obligations. Further, Cellspin would have no way of knowing in 2021 or early 2022 that the Court of Appeals for the Federal Circuit would decide the *Centripetal Networks* case.

---

[1] *See* Exhibit 39 is a screenshot of the Wayback Machine for the McKinsey & Company website showing McKinsey & Company offering Google services to its oil and gas customers it appears not to be publicly announced no earlier than 2022.

Cellspin contends that holding stocks in an Index Fund which plainly and openly includes specific companies, like Google, is no different than holding the same stocks in a blind trust because of the awareness by Judge Gonalez Rogers of her ownership of the Google stock contained within the Index Fund is the same. *Centripetal,* 38 F.4th at 1033.  There is no uncertainty about the ownership of the Google stock through Vanguard Index Fund making recusal mandatory under Section 455(b)(4).  *See Centripetal*, 38 F.4th 1033 ("In light of the foregoing, we hold that placing assets in a blind trust is not divestment under § 455(f), and Judge Morgan was disqualified from further proceedings in the case under § 455(b)(4)").

Given the holdings and outcome of *Centripetal Networks,* the relevancy of spousal financial holdings prompted a review of Matt Rogers (husband of Judge Gonzalez Rogers). It was at that time that Cellspin first discovered his problematic relationship with Google and his "partner" status with Venture Capital firm Ajax Strategies. Per Cellspin's review of publicly available sources, Mr. Rogers began at Ajax at least as early as April 2022.  Absent discovery, however, Cellspin cannot confirm any earlier involvement. Such scenario is an example of why the burden lies on the judges themselves to remain informed of their financial interests, as well as those of their spouses and immediate family.  *See* 28 U.S.C. § 455(c); *Shell Oil Co. v. U.S.*, 672 F.3d 1283, 1289 (Fed. Cir. 2012); *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 859 (1988); *Centripetal*, 38 F.4th at 1033-34.

Cellspin was diligent and its efforts uncovered numerous problematic financial relationships which individually and collectively required recusal long ago.  Indeed, "[w]hile no *per se* rule exists regarding the time frame in which recusal motions should be filed after a case is assigned to a particular judge, if the timeliness requirement is to be equitably applied, recusal motions should be filed *with reasonable promptness* after the ground for such a motion is ascertained." *Preston v. United States*, 923 F.2d 731, 733 (9th Cir. 1991).  Cellspin did just that, after becoming aware of these conflicts, and promptly filed the appropriate motion with factual details and exhibits.  *See* Dkt. No. 366.

### III.    Perception of No Bias and No Financial Interest in Parties is Paramount

An Article III Judge is appointed for life. Any perception of bias is not allowed. Defendants do not challenge the U.S. Supreme Court's guidance that "What matters is not the reality of bias or prejudice <u>but its appearance</u>." *Liteky v. United States*, 510 U.S. 540, 548 (1994) (emphasis added).   On this point the Defendants' silence is deafening.   Each of Google, Nike, Nikon, Garmin, Nikon, and Under Armour had the opportunity to affirmatively deny that they have a financial relationship with Rogers or "McKinsey & Company Special Situations Aggressive Long-Term." But each of these Defendants refused to assist with public perception that Judge Gonzalez Rogers and her husband do have a substantial financial interest in each Defendant. Each one refused to address Judge Gonzalez Rogers' multi-million dollar financial interest in "McKinsey & Company Special Situations Aggressive Long-Term," which Judge Gonzalez Rogers had an obligation to be aware of under § 455(c).

Indeed, this is consistent with Morrison Forester's analysis of the Federal Circuit's ruling in *Centripetal*. "It is **seriously inimical** to the credibility of the judiciary for a judge to preside over a case in which he has **a known financial interest in one of the parties** and for courts to **allow those rulings to stand**."[2] The article went on to recite the "Court stated that 'vacatur is essential to preserve public confidence.'" *Id.* Here, vacatur is also essential.

While Google and the other defendants cannot show an absence of improper financial interest by Judge Gonzalez Rogers and Matt Rogers, Google was itself more than willing to disclose publicly that Cellspin was demanding $537 million when it thought it was beneficial to its failed attorneys' fee motion.[3]  Here, of course, a finding of infringement by a jury may

---

[2] *See* Exhibit 38, Morrison Forester (Defendant Nikon's law firm) website article, *as last visited on February 8, 2023, as* https://federalcircuitry.mofo.com/topics/last-week-in-the-federal-circuit-june-21-24--maintaining-confidence-in-judicial-rulings-in-cases-reviewed-by-the-federal-circuit.html?utm_source=mondaq&utm_medium=syndication&utm_term=Intellectual-Property&utm_content=articleoriginal&utm_campaign=article. It recites " The Court noted the recent public scrutiny reporting that many federal judges or their families owned stock while presiding over cases.  The Court stated that 'vacatur is essential to preserve public confidence.'  And it suggested that vacatur is nearly always required." Exhibit 38.

[3] *See* Dkt. No. 339 at 2 fn 4 (citing Dkt. No. 283-7 (Fitbit-Blok Report) ¶ 8) ("Cellspin

result in a finding of willful infringement making Google's exposure about $2 Billion USD for its past infringement through trial.[4]  All this information was laid out when Google submitted Cellspin's damages expert report (the Fitbit-Blok Report) to the Court on February 24, 2022 (Dkt. No. 282-6), as Exhibit 1 to Google's motion to strike portions of it (Dkt. No. 281-2, 289).  Thus, the Court had knowledge of $537 million in potential Google liability being requested by Cellspin when it later ruled on all the Defendants' Summary Judgment Motions in June 2022.  *See* Dkt. No. 331.

Google acquiring Fitbit does quality as a financial interest in a defendant.  *See e.g. Key Pharms., Inc. v. Mylan Labs., Inc.*, 24 F.Supp.2d 480, 482 n. 2 (W.D.Pa.1998) (noting that, under §455, "the owner of stock in a parent corporation has a direct legal or equitable interest in a controlled subsidiary and the judge should disqualify himself"); *Shell Oil Co.,* 672 F.3d at 1291.

In *Shell*, the district court's wife inherited 97.59 shares of stock in Chevron, the parent company to defendants Texaco and Union Oil. *See Shell Oil Co.,* 672 F.3d at 1286.  The Federal Circuit stated unequivocally that: "Because the judge's wife owns shares in the parent company of Texaco and Union Oil, § 455(b)(4) requires recusal."  *Shell Oil Co.,* 672 F.3d at 1291. The guidance that stock in a. parent is a financial interest in the wholly owned subsidiary is not new law.  *Id.*

Additionally, Defendants misconstrue the importance of the analogy Cellspin makes to Ms. Beth F. Cobert, who disclosed owning the same "McKinsey & Company Special Situations Aggressive Long-Term" as a financial interest.  Akin to Section 455(c) governing Article III of the Judiciary, ignorance of financial interests is not allowed by appointees to positions within the Executive Branch, either. There, ethics is covered in relevant part by Title 18 U.S.C. Section 208.  *See* Dkt. No. 366-36 at 1. Ms. Cobert was not able to obtain the

---

eventually reduced its claim against Fitbit to $536.9 million during expert discovery.").  Fitbit did not redact this $537 million damages demand for a reasonable royalty from the public, even though the Fitbit-Blok Reports were not filed publicly, but instead were filed under seal. *See e.g.* Dkt. No. 283-7 (publicly stating that Exhibit 5 is Filed Under Seal).

[4] Also, the asserted Cellspin patents do not expire for another 5 (five) years until 2028.  This subjects Google to further foreseeable financial exposure through calendar year 2028.

transparency required to disclose her financial interests in McKinsey & Company "Special Situations Aggressive Long-Term Portfolio." *Id.* at 2. Although she made an inquiry of the manager, she still did not get details to allow her to avoid conflicts of interests with the position she was to be appointed to. *Id.* As such, she made plans to completely divested herself from any financial interest holdings in McKinsey & Company Special Situations Aggressive Long-Term Portfolio. *Id.*

In contrast, Judge Gonzalez Rogers has not divested herself from the McKinsey & Company Special Situations Aggressive Long-Term portfolio, despite admitting that matters relating to clients of her husband's company McKinsey & Company would require recusal. *See* Dkt. No. 366-3 at 35. But she has never made any disclosure of what exactly is the "McKinsey & Company Special Situations Aggressive Long-Term," that she reaps a 2020 dividend of more than $100,000 from. *See* Exhibit 41 at 5.

For context in 2013, Judge Gonzalez Rogers disclosed owning less than $1,000,000 in the McKinsey & Company Special Situations Aggressive Long-Term. *See* Exhibit 40 at 5. But by the calendar year 2020 financial disclosures, apparently filed with the appropriate government agency on October 27, 2021 (Dkt. No. 366-19) Judge Gonzalez Rogers disclosed having a financial interest that had ballooned to no less than $5 Million in the same McKinsey & Company Special Situations Aggressive Long-Term. *See* Exhibit 41 at 5.[5]

Thus, recusal is required under at least Section 455(a). *See Centripetal Networks, Inc. v. Cisco Systems, Inc.*, 38 F.4th 1025, 1039 (Fed. Cir. 2022) (citing 168 Cong. Rec. H4522 (daily ed. Apr. 27, 2022) (statement of Rep. Hakeem Jeffries) ("Failure to recuse can cause real harm to parties seeking fair and impartial justice and leave a cloud of doubt over any decision that is made once the conflicts are subsequently uncovered.")).

## IV.   New Law On Article III Disclosures and Judge Gonzalez Rogers Public Disclosures.

None of the parties can possibly comment on any "financial interests" for Judge

---

[5] The Gross Value at the end of the reporting period, which was December 31, 2020, is listed by Judge Gonzalez Rogers to be "P2" that corresponds to a legend that defines "P2" to include a financial interest between "$5,000,001 to $25,000,000." *See* Exhibit 41 at 5.

Gonzalez Rogers for the tax years 2021 or 2022, as there have been no such public disclosures made.[6]  As indicated above, instead of just submitting a declaration disproving a financial interest with the Rogers family, Defendants seek to put the blame on Cellspin for not figuring out these violations sooner. But Judge Gonzalez Rogers' financial disclosures for 2021 and 2022 still have not been released publicly, and her 2020 Financial Report was not filed until October 27, 2021.[7]

The Defendants' primary argument in opposition to Judge Gonzalez Rogers' recusal is that Cellspin should have figured out this perceived public bias in favor of Google or financial interest between her and the Defendants sooner. But that is a misapplication of the law. Section 455 puts an affirmative duty on the *Judge* – not the party – to remain fully informed of conflicts. Here, Judge Gonzalez Rogers did not even need to remain independently informed of the acquisition of Fitbit by Google, given that they filed a supplemental Rule 7.1 Disclosure that spelled out Google completed takeover of Fitbit resulting in Fitbit stock being delisted from all Stock exchanges on February 3, 2022. *See* Dkt. No. 366, Motion at 4, line 2 (*citing* Dkt. No. 165).

In 2022, Congress approved tougher financial disclosure rules for U.S. judges, a move triggered by a Wall Street Journal investigation. *See* Public Law 117-125 (the Courthouse Ethics and Transparency Act) became law on May 13, 2022.[8] "Congress responded by recently enacting the Courthouse Ethics and Transparency Act, Pub. L. No. 117-125, 136 Stat 1205 (2022), which requires judges to make more timely and accessible disclosures of their financial holdings and potential conflicts of interest." *Centripetal Networks, Inc. v. Cisco Systems, Inc*., 38 F.4th 1025, 1039 (Fed. Cir. 2022).

"Chief Justice Roberts similarly responded by devoting a substantial portion of his

---

[6] *See* U.S. Courts Website last visited on February 9, 2023, at https://pub.jefs.uscourts.gov.
[7] Counsel for Cellspin has checked the website for 2021 and 2022 financial reports but still as of February 10, 2023, the financial disclosures for Judge Yvoune Gonzalez Rogers as not publicly available and were not provided upon a submission request on the website.  *See* Garteiser Declaration, ¶6 (currently filed).
[8] *See* https://www.govinfo.gov/app/details/PLAW-117publ125, as last visited on February 9, 2023.

2021 Year-End Report on the Federal Judiciary to discussing the importance of judges complying with their ethical obligations." *Centripetal*, 38 F.4th at 1039 (Fed. Cir. 2022) (citing Chief Justice John G. Roberts, Jr., 2021 Year-End Report on the Federal Judiciary, 3). "I [Chief Judge Roberts] would like to highlight three topics that have been flagged by Congress and the press over the past year. They will receive focused attention from the Judicial Conference and its committees in the coming months."[9] Chief Judge Roberts explained "[b]eginning this past September, the Wall Street Journal published a series of articles stating that, between 2010 and 2018, 131 federal judges participated in a total of 685 matters involving companies in which they or their families owned shares of stock. That was inconsistent with Section 455, which requires that a judge recuse in any matter in which the judge knows of a personal financial interest, no matter how small." *Id.*

He emphasized, "Let me be crystal clear: the Judiciary takes this matter seriously. We expect judges to adhere to the highest standards, and those judges violated an ethics rule." *Id.* at 3. Chief Judge Roberts explained that Article III Judges "are duty-bound to strive for 100% compliance because public trust is essential, not incidental, to our function. Individually, judges must be scrupulously attentive to both the letter and spirit of our rules, as most are." *See* https://www.supremecourt.gov/publicinfo/year-end/2021year-endreport.pdf at 3–4.

As such, recusal under at least Section 455(a) is appropriate.

## V.     Google Funding of Ajax Strategies Startups and Partnership Requires Recusal and Vacatur.

Matt Rogers remains an operating partner at Venture Capital Firm Ajax Strategies. Relations between Ajax Strategies and Google are not attenuated or incidental connections. Companies do not put out press releases and news articles about their attenuated connections as Defendants contend. Instead, here Matt Rogers' companies have put out press releases and news articles about their funding and partnerships with Google. *See* Dkt. No. 366 at 8–14 (citing Exhibits).

---

[9] *See* the Supreme Court website, as last visited on February 9, 2023, at https://www.supremecourt.gov/publicinfo/year-end/2021year-endreport.pdf.

1.   Google has NOT denied that Matt Roger's company "McKinsey" has partnership and alliance with Google.

2.   Google has NOT denied that as an oil gas & energy senior partner at McKinsey, Matt Roger's sells Google services to his oil gas and energy clients.

3.   Google has NOT denied that Matt Roger's portfolio company "Planet" is funded by Google.

4.   Google has NOT denied that Matt Roger's portfolio company hydropower startup "Natel Energy" is funded by Google.

5.   Google has NOT denied that Matt Roger's portfolio company start-up "Ripple Food" is funded by Google.

6.   Google has NOT denied that Matt Roger's portfolio company "Lime" has strategic partnership with Google.

7.   Google has NOT denied that Matt Roger's portfolio company "Voltus" has partnership with Google.

8.   Google has NOT denied that Matt Roger's portfolio company "StreetLight Data" has partnership with Google.

9.   Google has NOT denied that Matt Roger's portfolio company "Descartes Labs" has customer partnership with Google.

10.   Google has NOT denied that Matt Roger's portfolio company "Regrow" has partnership with Google.

Google fails to provide a declaration that it does not have any financial interest/relationship with any of the eight Matt Roger Ajax Strategies companies.

Matt Rogers' Ajax Strategies and Google connections are much more strategic than suggested by Defendant Fossil. Google has funded hundreds of millions of dollars in Ajax companies. And not all the 4,000 Google partners get hundreds of millions of dollars in funding, as Ajax companies did. Google even put Ajax Strategies companies on Google's own website. *See e.g.* Dkt. No. 366-17 (refiled as Dkt. No. 371-12) Exhibit 15 (Google's

11

own website shows and touts "Descartes Lab" partnership); Dkt. No. 366-18 (refiled as Dkt. No. 371-13) Exhibit 16 (Excerpt from Google Cloud Website Related to Ajax Startup Regrow). Google does not extend that privilege to all its partners. In any event, whether Google invests in *other companies* is entirely irrelevant to the question of financial relationship and perceived bias in *this* case.

Google has invested with others at least $700 Million USD in Matt Roger's Ajax. *See* Dkt. No. 366 at 9-11; *see also* https://www.crunchbase.com/organization/natel-energy. Regardless of Google's share of such a massive investment, there is zero question that such is a significant financial interest by Google in Mr. Rogers' startups.

Thus, under Section 455 recusal is appropriate here.

## VI.   McKinsey and Google Partnership Justify Recusal and Vacatur.

Matt Rogers is a senior partner for oil, gas and energy clients at McKinsey.  Cellspin's allegations is not about the "mere fact that McKinsey uses Google Cloud." Rather, Cellspin is alleging that senior partner Matt Rogers sells Google services to his oil, gas & energy clients and part of his pay and bonus is dependent on his client's satisfaction and success through the use Google services.  This scenario is not the same as envisioned by Advisory Opinion No. 107 at 209 of businesses that offer services to a judge's spouse, like a bank provider (Bank of America) or wireless provider (AT&T). Here, direct and consequential spousal business relationships exist between Google and Matt Rogers.

Thus, recusal is appropriate under at least Section 455(b)(4).

## VII.   Millions Invested In Index Funds Justify Recusal and Vacatur For These Parties.

Defendants are mistaken that Cellspin is addressing regular Mutual Funds or Pension Funds. And contrary to Google's assertions, none of the case law and Advisory Opinion cited by Google applies to Index Funds. The Judicial Conference's Committee on Codes of Conduct have not opined on Index Funds.  But the disclosures, like a privilege log, are designed to identify investments to encourage transparency and allow for challenge and full disclosure where appropriate. And as much as Defendants would like to rely on Committee

on Codes of Conduct Advisory Opinions, the words "Index Fund" are not even mentioned. Cellspin's requested recusal is not about the size of the fund, ease of access, pace of turnover, or the number of participants in the fund, it is about the Judge being fully aware that she has Google stocks in her top ten holdings, of her more than $10 Million U.S. Dollar Index fund portfolio. Index Funds make Judge Gonzalez Rogers fully aware of her stock holdings in Google, among other Defendants.  Cellspin's contention is that someone who has anywhere between $9.4 Million to $43.5 Million in Index Funds is a sophisticated investor that knows (or, at minimum, is reasonably perceived as knowing) what the top ten holdings of that Index Fund are. Congress and the intent of Advisory Opinions is that a Judge should not have stock holdings in a party when she is ruling on that case.  And while it may seem onerous for an Article III judge, here it is an obvious obligation of any Article III Judge to maintain the perception of not being biased and not have a financial interest in a party or the outcome.

So even if the exemplar financial disclosure referenced the Vanguard Index Fund, the obligation to not have any ownership of stock of a party to the litigation still applies and the post 2022 Congress enacted new laws to avoid bias and conflicts of interest. And investing in an index fund when a party is Google does not work to circumvent the bright line rule to not own stock in a party.  Here, Judge Gonzalez Rogers knows full well that both Google and Apple are in the top ten holdings of the Vanguard Index Fund. Unlike the normal cloudiness of Mutual Funds where stocks are bought and sold every so often, in an Index fund it is very transparent with its holdings of stocks in the Index. As the Federal Circuit explained, "we are entitled to give some weight to the committee's views because Congress enacted § 455(b) to match Canon 3C of the Code of Judicial Conduct, which provides in relevant part that a judge 'shall disqualify himself in a proceeding' **where he 'knows that he . . . or his spouse . . . has a financial interest** . . . in a party to the proceeding, . . '". *Centripetal Networks, Inc.*, 38 F.4th at 1030 (Fed. Cir. 2022). It is impossible to believe that a Judge sophisticated enough to acquire anywhere between $9.465 Million and $43.65 Million dollars through investments does not know that Google is included in the Vanguard Index Fund.

While that is not a problem for 99.9% of judges, it mandates *sua sponte* recusal under

Section 455(a) and Section 455(b)(4) for Judge Gonzalez Rogers. And if she didn't know Google was included in the Vanguard Index Fund then she should have known under her obligations to stay informed of her and her husband's stock holdings as required under Section 455(c).

Google does NOT deny that it is public knowledge that Google stock has been in the top 10 holding of Vanguard Index Fund for *years*. Google does NOT deny that Judge Gonzalez Rogers knows that she has substantial stock holdings in Google because of her millions of dollars invested in Index Funds. Google fails to provide one declaration that it does not have a financial relationship as defined under Section 455 with Judge Gonzalez Rogers. Moreover, not one Defendant denies it is a part of Judge Gonzalez Rogers' stock ownership in Index Funds because of substantial financial investments.

## VIII. Defendant Specific Responses.

Defendants Fossil Group, Nike, Nikon, Under Armour, and Garmin completely fail to address the fact that Judge Gonzalez Rogers <u>used the same rationale and reasoning for granting</u> MSJ for all defendants as documented in the <u>twenty plus</u> footnotes Cellspin cited directly from her dispositive Order that applied to all Defendants. As such, recusal is appropriate and vacatur should properly follow.[10] *See* 28 U.S.C. § 455(c); *Shell Oil Co. v. U.S.*, 672 F.3d 1283, 1289 (Fed. Cir. 2012); *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 859 (1988); *Centripetal*, 38 F.4th at 1033-34. Contrary to Defendants' argument, divesture applies to the "financial interest" and not the related defendants.

In *Shell Oil*, the Federal Circuit addressed Defendants' argument. "Because the divestment exception set forth in § 455(f) applies only to divesting a financial interest in a party, and there is no indication that Congress intended to create an exception whereby a judge can sever or 'divest' **certain parties** from the case to resolve a conflict, we find Plaintiffs' argument is **not well-taken**. "This is particularly true where, as here, there is substantial overlap with respect to the issues involved in the remaining parties' claims, and the matters had been considered jointly throughout the proceedings." *Id.*

---

[10] *See* Dkt. No. 366 at 25-28; *see also* Exhibit 38 at 3 (concurrently filed).

14

Indeed, recusal for just Fitbit, LLC without recusal in the other related patent infringement litigation would create undue harm to Cellspin and be seen as prejudicial by the public. These six (6) cases all involve the same patents, the same dispositve Summary Judgment Order of Non-Infringement that addressed all 6 (six) Defendants with a single order. The Federal Circuit even consolidated the six (6) appeals on its own accord. And the Federal Circuit denied Cellspin's motion to deconsolidate due to the "overlap" of issues that the Federal Circuit itself identified.

If Gonzalez Rogers did decide to maintain jurisdiction over the other five (5) defendants, then like the district court in *Shell,* she would still not satisfy her statutory requirement to recuse herself under Section 455(b). *See Shell Oil,* 672 F.3d at 1291 ("The judge's decision to *sua sponte* sever Texaco and Union Oil did not satisfy the statutory requirement of disqualifying himself from the entire proceeding.").

Nikon fails to provide a declaration that it does not use Google services for Nikon Image Space. According to publicly available information, the accused Nikon's use of Google Cloud. *See* https://reg.cld.nikon.com/myp/cookie_notice?lang=en.

Fossil's contention that Cellspin "does not appeal the Judge's rulings as to the Fossil Wear OS products" is not relevant. That decision was made for reasons unrelated to the merits of the motion for summary judgment decision regarding Fossil Wear OS products.

Garmin's contention that "a decision that helps or hurts Fitbit will have the opposite effect on Garmin" and Garmin's accompanying cited caselaw is entirely inapposite. Cellspin is not a public company and is not part of any Index Fund. As noted, the Court's Summary Judgment Order relied repeatedly on the erroneous Fitbit analysis across all Defendants, including Garmin.

Respectfully Submitted,

Dated: February 10, 2023   /s/ *Randall Garteiser*
Randall T. Garteiser (CA State Bar No. 231821)
rgarteiser@ghiplaw.com

15

Chris A. Honea (CA State Bar No. 232473)
   chonea@ghiplaw.com
M. Scott Fuller (TX State Bar No. 24036607)
   sfuller@ghiplaw.com
**GARTEISER HONEA**
95 Third St., Fl. 2, San Francisco, CA  94103
119 W Ferguson, Tyler, TX  75702
Tel:  (888) 908-4400

Attorneys For Plaintiff,
CELLSPIN SOFT INC.

United States District Court
Northern District of California

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

CELLSPIN SOFT, INC.,

      Plaintiff,

      vs.

FITBIT, INC.,

-----------------------------------------------

NIKE, INC.,

-----------------------------------------------

UNDER ARMOUR, INC.,

-----------------------------------------------

FOSSIL GROUP, ET AL.,

-----------------------------------------------

GARMIN INTERNATIONAL, INC.,

-----------------------------------------------

NIKON AMERICAS, INC., ET AL.,

      Defendants.

**ORDER DENYING MOTION FOR RECUSAL PURSUANT TO SECTION 455**

Case No. 4:17-CV-05928-YGR

Case No. 4:17-CV-05931-YGR

Case No. 4:17-CV-05932-YGR

Case No. 4:17-CV-05933-YGR

Case No. 4:17-CV-05934-YGR

Case No. 4:17-CV-05936-YGR

Pending before the Court is a futile attempt to evade the Federal Circuit's review of this Court's June 7, 2022, 83-page comprehensive order granting defendants' motions for summary judgment. (Dkt. No. 331.) [1] Plaintiff's chosen vehicle is a motion for recusal of the undersigned under 28 U.S.C. §§ 455(a)-(d). (Dkt. No. 366.)

---

[1] These defendants include Fitbit, Inc. ("Fitbit"), Nike, Inc. ("Nike"), Under Armour, Inc. ("Under Armour"), Fossil Group ("Fossil"), Garmin International, Inc. ("Garmin"), and Nikon Americas, Inc. ("Nikon"). Plaintiff's caption also extends its motion to defendant Moov, Inc. ("Moov"). Judgment was not entered as to Moov.

All docket references are to Case No. 4:17-cv-5928-YGR unless otherwise indicated.

1      In short, plaintiff's attack on the integrity of the judiciary, through the undersigned,[2] not

2 only demonstrates a measure of desperation, but is divorced from the law and the facts. Reduced

3 to its essence, and extended to its illogical conclusion, the motion would seek to have federal

4 judges recuse after the appeal of their objective findings, based upon nothing but speculation and

5 attenuation. The argument is extreme and meritless.

6      Notably, plaintiff's motion is also plagued by myriad procedural deficiencies. While the

7 Court is under no obligation to address the meritless assertions in detail, it does so at exacting

8 length to increase transparency[3] and reassure the public that members of the judiciary take

9 seriously their obligation to be impartial and objective. Unfortunately, the judiciary cannot predict

10 when lawyers and parties will grasp to bypass the normal avenues of appellate review hoping for

11 the proverbial second bite at the apple.

12      Simply put, the undersigned has no material financial stake in the outcome of this case and

13 there is no other reason why her impartiality might reasonably be questioned to justify recusal.

14 Evidence does not exist to support a contrary result. Nor do bald attorney arguments divorced

15 from law and fact compel a different finding. For the following reasons, the motion for recusal is

16 **DENIED**.[4]

---

[2] Through convoluted allegations, the plaintiff also seeks to attack the business affiliations of the undersigned's husband. The undersigned's husband is only affiliated with this case by way of the undersigned's role as an officer of the court. While his name has been extensively highlighted in the record, the Court finds no reason to inject it further into this dispute.

[3] Plaintiff baldly suggests that the Court has been derelict by failing to submit its 2021 and 2022 financial disclosures. This attack on the Court's integrity is inconsistent with fact. The 2022 deadline has not passed. As to the 2021 fiscal year, the Court did timely submit a disclosure. Its public release has been temporarily stayed because the Administrative Office of the U.S. Courts, not the undersigned, found that the undersigned and her husband actually **over-disclosed**, further demonstrating the Court's commitment to transparency. That disclosure will ultimately be released and will not change the outcome of this motion.

[4] Fitbit, Nike, Under Armour, Fossil, and Nikon all filed briefs opposing the motion in their respective cases or the docket concerning Fitbit. Garmin filed an unopposed request for leave to file its opposition, which is granted. All oppositions are considered.

Since plaintiff failed to notice the motion for hearing consistent with Civil Local Rule 7-2, Fitbit noticed the motion for hearing on February 28, 2023. Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the Court finds that the motion is appropriate for decision without oral argument. Therefore, the hearing noticed for February 28, 2023 is

# I.    BACKGROUND

The Court assumes the parties' familiarity with the factual underpinnings of this lawsuit, which are largely irrelevant to the pending motion.

This lawsuit was commenced in 2017 when plaintiff filed over a dozen complaints alleging infringement of one or more patents.  In December 2017, the undersigned related fourteen cases.  (Dkt. No. 18.)  Subsequently, on April 10, 2018, the Court dismissed plaintiff's claims finding that the asserted patents at issue were directed to unpatentable subject matter pursuant to 35 U.S.C. § 101.  (Dkt. No. 79, 81.)  That order was appealed and subsequently reversed by the Federal Circuit.  (Dkt. No. 108.)  Following remand, the cases proceeded through claim construction and discovery.

Relevant to the pending motion, on February 3, 2021, Fitbit submitted an Amended Corporate Disclosure Statement and Amended Certification of Interested Parties disclosing that "it is a subsidiary of Google LLC, which is a subsidiary of XXVI Holdings Inc., which is a subsidiary of Alphabet Inc., a publicly traded company."  (Dkt. No. 165.)  According to plaintiff's pending motion, Google's[5] introduction into these proceedings via Fitbit gave rise to publicly known circumstances which plaintiff now claims, over – months later, required the undersigned to recuse herself from these patent cases.  Plaintiff did not move for disqualification and proceedings continued.

In January 2022, the defendants moved for summary judgment of noninfringement.  A joint hearing on the motions was held on April 22, 2022, where the nuances of the various motions were addressed extensively.  After taking the motions for summary judgment under submission, the Court issued a comprehensive omnibus order on June 7, 2022.  (Dkt. No. 331.)  That order addressed the particularities of each motion brought by the defendants.  Where the order addressed all pending claims, judgment was entered in favor of the defendants on June 15, 2022.

---

**VACATED**.

[5]  Plaintiff broadly uses "Google" to refer to myriad projects, investments, entities, partnerships, and services.  Through this shotgun tactic, plaintiff has substantially failed to articulate the legal foundation throughout the vast majority of its filings.

3

United States District Court
Northern District of California

1    Approximately one month later, plaintiff filed its notice of appeal on July 13, 2022.  (Dkt.

2  No. 346.)  Taking judicial notice of the appellate record, the appeal was docketed on July 15,

3  2022, and plaintiff filed an opening brief on December 16, 2022.

4    Nearly seven months after entry of judgment and after substantial progress on appeal,

5  plaintiff has now moved to recuse the undersigned pursuant to 28 U.S.C. §§ 455(a)-(d) and

6  requests that the Court vacate the entry of summary judgment in favor of the defendants due to the

7  alleged violations of section 455.  In short, the motion asserts that the Court has an appearance of

8  bias in favor Google or financial interests in Google.  Plaintiff bases these allegations on at least

9  three reasons: (1) the undersigned's husband's employment with McKinsey & Company, Inc.

10  ("McKinsey"); (2) the undersigned's husband's employment with Ajax Strategies Venture Capital

11  as an Operating Partner ("Ajax") where he purportedly handles over eight companies funded

12  and/or in partnership with Google; and (3) the undersigned's purported investments in Google and

13  the defendants through the Vanguard 500 Index Fund, Vanguard Total International Stock Index

14  Fund, and the McKinsey Special Situations Aggressive Long-Term fund ("Special Situations

15  Fund").  While plaintiff's motion attaches over 1500 pages of exhibits, the Court notes that

16  plaintiff does not cite to the documents with any degree of particularity.  As addressed below, the

17  accusations are frivolous and devoid of any evidentiary merit.  While unnecessary, this order

18  provides detail to support transparency and any appellate review.

19  **II.    LEGAL STANDARDS**

20    The standard for recusal is not in serious dispute.  The Court's duty to recuse here is

21  governed by 28 U.S.C. § 455.

22    First, a judge "shall disqualify [her]self in any proceeding in which [her] impartiality might

23  reasonably be questioned."  28 U.S.C. § 455(a).  In analyzing the Court's impartiality, the Ninth

24  Circuit "employ[s] an objective test: 'whether a reasonable person with knowledge of all the facts

25  would conclude that the judge's impartiality might reasonably be questioned.'"  *Clemens v. U.S.*

26  *Dist. Ct.*, 428 F.3d 1175, 1178 (9th Cir. 2005) (quoting *Herrington v. County of Sonoma*, 834 F.2d

27  1488, 1502 (9th Cir. 1988)).  It is well-known that "the 'reasonable person' is not someone who is

28  'hypersensitive or unduly suspicious,' but rather is a 'well-informed, thoughtful observer.'  The

4

standard must not be so broadly construed that it becomes, in effect, presumptive, so that recusal is mandated upon the merest unsubstantiated suggestion of personal bias or prejudice." *United States v. Holland*, 519 F.3d 909, 913 (9th Cir. 2008) (internal citations omitted).

Second, a judge "shall also disqualify [her]self . . . [when she] knows that [s]he, individually or as a fiduciary, or [her] spouse . . . has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding." 28 U.S.C. § 455(b)(4). A "financial interest" is statutorily defined as "ownership of a legal or equitable interest, however small, or a relationship as director, adviser, or other active participant in the affairs of a party." 28 U.S.C. § 455(d)(4). However, "[o]wnership in a mutual or common investment fund that holds securities is not a 'financial interest' in such securities unless the judge participates in the management of the fund." 28 U.S.C. § 455(d)(4)(i).

Notably, "[j]udges are presumed to be impartial and, accordingly, parties seeking recusal bear the substantial burden of proving otherwise." *Stebbins v. Polano*, No. 21-cv-04184-JSW, 2021 WL 8532245, at *1 (N.D. Cal. Oct. 22, 2021) (internal quotations and citations omitted); *see also Pope v. Fed. Express Corp.*, 974 F.2d 982, 985 (8th Cir. 1992) ("A party introducing a motion to recuse carries a heavy burden of proof; a judge is presumed to be impartial and the party seeking disqualification bears the substantial burden of proving otherwise.").

## III.   DISCUSSION

### A.   Jurisdiction

Before diving into the merits of the pending motion, the Court addresses jurisdictional matters. It is well-established that "[t]he filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982). As acknowledged by the Ninth Circuit, this is a "judge-made doctrine designed to avoid the confusion and waste of time that might flow from putting the same issues before two courts at the same time." *Kern Oil & Refining Co. v. Tenneco Oil Co.*, 840 F.2d 730, 734 (9th Cir. 1988) (internal quotation marks and citation omitted). Since judgment has been

1    entered and plaintiff has filed an appeal, this Court has been divested of jurisdiction over the

2    summary judgment order.  Jurisdiction continues to exist over post-judgment proceedings

3    ancillary to issues raised on appeal.

4         To the extent plaintiff is seeking to disqualify the undersigned from post-judgment

5    proceedings such as cost motions that have not been decided, that request is properly before the

6    Court.  However, plaintiff asks for much more.  Plaintiff "moves to vacate entry of the joint

7    Summary Judgment Order in favor of all Defendants and all subsequent orders thereto."  (Dkt. No.

8    366 at 1.)  Procedurally, the request to vacate the summary judgment order is defective for at least

9    two reasons.

10        First, the summary judgment order is before the Federal Circuit.  The Court has no

11   authority to vacate the order because the appeal divested it of jurisdiction.  Plaintiff should have

12   filed a motion for an indicative ruling pursuant to Federal Rule of Civil Procedure 62.1.  That rule

13   would permit this Court to defer consideration of the motion, deny it, or state that it would grant it.

14   Notably, the rule and relevant standard is nowhere within plaintiff's motion.  Even though plaintiff

15   is not pro se and is proceeding through counsel, the Court generously construes a request for an

16   indicative ruling into plaintiff's filing to promote judicial economy for the Court and parties.

17        Second, requests to vacate are made pursuant to Federal Rule of Civil Procedure 60.

18   Under Rule 60, a district court "may relieve a party or its legal representative from a final

19   judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or

20   excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have

21   been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously

22   called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the

23   judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an

24   earlier judgment that has been reversed or vacated; or applying it prospectively is no longer

25   equitable; or (6) any other reason that justifies relief."  Plaintiff's vague gestures to Rule 60 in its

26   motion fails to identify the precise basis upon which it relies to vacate the summary judgment.

27   Once more, the Court generously construes counsel's motion as a request to vacate the judgment

28   "as void" in light of the conflicts asserted.

United States District Court
Northern District of California

6

1    For the reasons addressed below, the motion fails.  No conflict or extraordinary

2    circumstances exist to void the judgment.  The Court would also deny the motion if jurisdiction

3    existed over the summary judgment order.

4    **B.    The Motion is Untimely**

5    Another threshold issue, separate and apart from the jurisdictional issues identified, the

6    Court considers whether plaintiff's motion pursuant to section 455 is timely.  *United States v.*

7    *Rogers*, 119 F.3d 1377, 1380 (9th Cir. 1997).  The Court has little difficulty determining that it is

8    not.  This on its own is a sufficient basis to deny plaintiff's motion.

9    Section 455 does not have a statutory deadline.  Nevertheless, as the Ninth Circuit has

10   instructed, "[a]bsent a timeliness requirement, parties would be encouraged to withhold recusal

11   motions, pending a resolution of their dispute on the merits, and then if necessary invoke section

12   455 in order to get a second bite at the apple."  *Rogers*, 119 F.3d at 1380.  Such an open-ended

13   approach without any measure of deterrence "would result in increased instances of wasted

14   judicial time and resources and a heightened risk that litigants would use recusal motions for

15   strategic purposes."  *Preston v. United States*, 923 F.2d 731, 733 (9th Cir. 1991).  Notably,

16   "[w]here unexplained delay in filing a recusal motion suggests that the recusal statute is being

17   misused for strategic purposes, the motion will be denied as untimely."  *United States v. Mikhel*,

18   889 F.3d 1003, 1027 (9th Cir. 2018).  Further, "[w]hile no per se rule exists regarding the time

19   frame in which recusal motions should be filed after a case is assigned to a particular judge, if the

20   timeliness requirement is to be equitably applied, recusal motions should be filed with reasonable

21   promptness after the ground for such a motion is ascertained."  *Preston*, 923 F.2d at 733.  Courts

22   have also long recognized that waiting to raise the issue until after an unfavorable order was on

23   appeal is sufficient grounds to deny a motion.  *See, e.g.*, *Oglala Sioux Tribe of Pine Ridge Indian*

24   *Rsrv. v. Homestake Min. Co.*, 722 F.2d 1407, 1414 (8th Cir. 1983) ("[A] timeliness requirement is

25   appropriate, especially in this case where the Oglala Sioux were aware of the alleged grounds for

26   disqualification at the time the case was assigned to Judge Bogue, but the suggestion for

27   disqualification was not raised until this appeal."); *In re United Shoe Mach. Corp.*, 276 F.2d 77,

28   79 (1st Cir. 1960) ("One of the reasons for requiring promptness in filing is that a party, knowing

7

United States District Court
Northern District of California

1    of a ground for requesting disqualification, cannot be permitted to wait and decide whether he

2    likes subsequent treatment that he receives.").

3         Plaintiff's motion is not reasonably prompt as demonstrated by plaintiff's own filings.

4    According to plaintiff's motion, Fitbit disclosed its affiliation with Google on February 3, 2021

5    after a well-known merger, by filing its amended certification on the docket.  Plaintiff is charged

6    with knowledge of this document as a user of ECF.  Notably, plaintiff's allegations concerning the

7    Court's financial interests and affiliations with Google are based on the undersigned's 2020

8    Financial Disclosure.  That disclosure was available through the balance of 2021 and 2022.  While

9    plaintiff highlights the 2020 Financial Disclosure, the investments at issue in the motion have been

10   publicly known since the 2012 Financial Disclosure and have not changed.  Remarkably, plaintiff

11   also extensively relies upon this Court's Questionnaire for Judicial Nominees to criticize

12   affiliations with McKinsey.  That questionnaire was submitted and has been publicly available

13   since 2011.  Both sources of public information predate Fitbit's disclosure.  While an affiliation

14   with Ajax developed after that disclosure was filed, plaintiff's own motion and evidence

15   demonstrate that the undersigned's husband was in the position nine months prior to the motion

16   being brought and that at a minimum plaintiff knew of the position in November (roughly one

17   month prior to substantially commencing appeal).  As set forth below, this is immaterial since

18   there are no financial interests or affiliations related to these proceedings.

19        Despite these public disclosures, plaintiff sat on the motion and strategically litigated this

20   case through summary judgment.  This is a dipositive fact the reply brief ignores in its entirety.[6]

21   After appealing that ruling, filing an opening brief on appeal, and triggering the defendants'

22   obligation to respond to the appeal, plaintiff then filed the present motion before the Court.  There

23   is little doubt that filing the motion nearly seven months after judgment was entered and after an

24   appeal has been substantially commenced is gamesmanship.  Indeed, plaintiff's blanket request to

25   vacate the judgment as to *all defendants*, not just Fitbit, illuminates plaintiff's true intention of

26

27        [6]  Plaintiff raises a futile argument that it did not know the Federal Circuit was going to
     decide *Centripetal Networks* until 2022.  The inference plaintiff seeks to make is that the decision

28   substantially altered the legal landscape.  As explained *infra*, that decision has no bearing on this
     motion.

8

1    securing an unwarranted second bite at the apple.

2        The procedural deficiencies of the motion are replete.  First, it was only filed in the action

3    concerning Fitbit even though separate judgments were issued as to each defendant in each

4    underlying action and relief was sought against all.  Second, the motion also fails to include a

5    notice of motion as required by Civil Local Rule 7-2(b).[7]  This requirement exists to alert non-

6    movants of their rights and obligations with respect to the movant's assertions.  Failing to comply

7    is significant.  Consideration of the defendants' oppositions highlight the concern.

8        Third, proper motion practice requires identification of supporting evidence, not present

9    here.  Throughout these proceedings, plaintiff has cited extensively to voluminous documents

10   without explanation and proper pincites.  The Court noted as much in the summary judgment

11   order:  "Cellspin's citations to swaths of documents without explanation does not create a genuine

12   dispute of material fact."  (Dkt. No. 331 at 2:12-13.)  Despite the admonishment, plaintiff's

13   counsel has once again submitted approximately 1500 pages in connection with the motion.

14   Plaintiff makes broad string cite references to its exhibits without any pincites.  This sends the

15   Court and defendants on a fishing expedition to identify the relevance of a document that is not

16   always apparent.  As noted below, some of the documents cited do not exist, others are illegible

17   copies,[8] and many more do not stand for the proposition asserted even under a liberal construction.

18   Finally, plaintiff has not submitted any declaration to justify its lack of diligence, and instead,

19   once again relies upon misplaced attorney argument divorced from fact and law.

20       For these reasons, the motion is untimely and can be denied.

21   **C.    Purported Bases for Recusal**

22       Substantial justification exists to deny the motion on procedural grounds and the Court

---

24       [7]  Under controlling rules, motions in this District must contain a notice that includes the
25   date and time of a hearing, as well as "a concise statement of what relief or Court action the
     movant seeks."  Civ. L.R. 7-2(b)(1)-(3).

26       [8]  Plaintiff appreciated that substantial portions of its initial filing were illegible and filed a
27   correction without withdrawing the original set of exhibits.  (Dkt. No. 371.)  Rather than create a
     legible filing in the first instance, plaintiff's correction required the Court to evaluate two sets of
28   exhibits to verify the information being provided and discern why they were being corrected.

United States District Court
Northern District of California

United States District Court
Northern District of California

does not need to reach the accusations raised.  Nonetheless, to promote transparency and maintain the Court's credibility in light of plaintiff's sweeping assertions, the Court addresses the plaintiff's accusations and evidentiary submission at great lengths.  In short, the accusations have no merit. The order addresses affiliations with McKinsey and Ajax that are unrelated to these proceedings, as well as the Court's independent financial investments.

### 1.    *Affiliations with McKinsey*

The Court begins by addressing whether the undersigned's prior familial affiliations with McKinsey have created financial interests in this case or create a reasonable appearance of impartiality to justify recusal in this case.  They do not.

Plaintiff writes that the undersigned's husband consults in the oil, gas, and energy sectors as a Senior Partner at McKinsey, where he has authored over 20 articles related to the oil and gas industries.  From there, plaintiff asserts that McKinsey has a strategic partnership with Google and has teamed up with Google to assist clients in the oil, gas, and energy sectors as demonstrated by various McKinsey blog postings.  Highlighting one such partnership, which is not directly tied to the undersigned's husband (even on information and belief), plaintiff alleges that McKinsey assisted an energy sector client in avoiding more forest fires and associated power outages in California after the wake of the Dixon Fire in 2021.[9]  According to the plaintiff "being a senior partner at McKinsey & Company . . . doing substantial business with Google looks inappropriate for Google to appear before [the undersigned].  Google and [the undersigned's] husband's firm provide for profit joint solutions to their clients, which creates the objective appearance that [the undersigned] would be biased in favor of Google."  (Dkt. No. 366 at 8.)  For the first time in reply, plaintiff asserts that the undersigned's husband sells Google services and that "his pay and bonus is dependent on his client's satisfaction and success through the use of Google services."  (Dkt. No. 375 at 12.)  Plaintiff's evolving theory for recusal is nothing but unsubstantiated speculation

---

[9]  The Court notes that the motion references Exhibit 5a to support this factual assertion. This appears to be missing from the record.  Ultimately, this is immaterial because plaintiff has not demonstrated that the undersigned's husband had any involvement with this project, nor is the Court aware of any of the work alleged.

divorced from any evidence.

First, the Court clarifies that the undersigned's husband has not been a Senior Partner at McKinsey since July 31, 2021. This is eleven months prior to the summary judgment order being issued in this case. Plaintiff's selective quote of the undersigned's nomination disclosures to justify recusal does not persuade. The May 2011 disclosure provided in full: "[m]y husband is a senior partner at McKinsey. Matters relating to McKinsey and, more broadly, *to my husband's primary clients* would also likely require recusal." (Emphasis supplied.) This disclosure differs significantly from plaintiff's reconstruction in its motion which claims that the undersigned "disclosed that if a 'primary' client of her husband's consulting firm, McKinsey, became a party before her, she would have to recuse herself." (Dkt. No. 366 at 4.) In short, McKinsey has never been a party to these proceedings. Despite the substantial commentary available online that the plaintiff leverages in its motion, the plaintiff did not, *and cannot*, point to a single instance tying the undersigned's husband to a Google project or partnership, including without limitation any related to Fitbit or a party in these proceedings. None exists. Nor has plaintiff proffered any admissible evidence that Google was a client, let alone a primary client or partner, of the undersigned's husband and that he profited from such a relationship. No such evidence exists. Nor does any evidence exist that the parties to this infringement action were clients of my husband in any capacity that would support recusal.[10]

In short, plaintiff carries a heavy burden to justify disqualification. It has failed to demonstrate that the undersigned or her husband have a material financial stake in the outcome of this case due to McKinsey's affiliations with Google and there is no other reason why the undersigned's impartiality might reasonably be questioned.[11] The motion is denied on this basis.

---

[10] As a matter of practice, the Court consistently recuses on all matters that have concerned my husband's clients and this case would be no exception were there any basis to do so.

[11] The motion sets forth essentially no foundation for alleged partnerships or projects concerning the undersigned's husband. At most, it appears that Google was one of several cloud-based service providers for McKinsey, providing services as part of the regular course of business. Consistent with Advisory Opinion 107, when a "service provider's transactions with the judge's spouse or the spouse's business are in the regular course of business, routine in nature, and are

United States District Court
Northern District of California

## 2. Affiliations with Ajax

Next, plaintiff alleges that the undersigned's husband has obtained financial benefits from Google since at least March of 2022 through his role as Operations Partner at Ajax. The motion as presented raises two categories of affiliations to suggest that recusal is proper. First, the motion alleges that the undersigned's husband has overseen the operations of three start-up companies funded by Google since at least March of 2022. This specifically includes: (1) Planet Labs, Inc. ("Planet Labs"); (2) Natel Energy ("Natel"); and (3) Ripple Foods. Second, the motion alleges that the undersigned's husband has handled several strategic partnerships with Google in his role as Operations Partner. These partnerships include (1) Lime; (2) Voltus; (3) Streetlight Data; (4) Descartes Lab; and (5) Regrow. Again, this argument is frivolous, lacks any merit, and makes substantial misrepresentations of the record provided.

To begin, it is true that the undersigned's husband has been an Operations Partner at Ajax since April 2022. However, plaintiff seeks to create an inference that the undersigned's husband has equity in Ajax based solely on the title "Operations Partner." Plaintiff is wrong. The undersigned's husband is a contractor for Ajax with no equity in any Ajax portfolio.

In his role as an Operations Partner, he represents Ajax's interests by serving on the board of Natel and as a board advisor to another company not implicated in the motion.[12] These are his only engagements. Despite plaintiff's bald accusations, the undersigned's husband has no interest or relationship with Lime, Voltus, Streetlight Data, Descartes Lab, Regrow, and Ripple Foods. Planet Labs, which is identified in the motion, is one of approximately sixty customers of Natel's software business. He has no equity interest in Planet Labs, at most his affiliation is attenuated.[13]

---

unaccompanied by special circumstances suggesting that the selection of the spouse or spouse's business may have been influenced by the judge's position, recusal is ordinarily not required." This applies with equal force here. Adopting plaintiff's contrary theory would mean the undersigned is required to recuse anytime a business integrates something as simple as a Google search into its internal platforms. No authority supports such a grasping theory.

[12] In furtherance of transparency, the company is Ojjo. The undersigned knows of no affiliations with Google, Ojjo, and other parties in this case that would justify recusal.

[13] While the foregoing is sufficient to dispense of the motion with respect to all Ajax

Other evidentiary submissions are similarly deficient.  One, to create the appearance of a non-existent personal interest to Ripple Foods, plaintiff relies upon a July 14, 2016, article from AgFunder Network Partners to note that Ripple Foods raised $30 million from Google and other investors.  Per plaintiff's own evidence, this alleged conduct pre-dates the undersigned's husband's tenure by approximately six years.  No evidence supports any personal affiliation because none exists.  Two, with respect to Streetlight Data, the sole exhibit relied upon is from April 7, 2020, which would predate any personal affiliation with Ajax by two years.  No evidence supports any personal affiliation because none exists.  Three, with respect to Lime's nexus to Ajax, plaintiff relies upon a blog post from Lime that apparently touts the benefits it obtains from Google.  No evidence supports any personal affiliation because none exists.  Four, as to Descartes Lab, Regrow, and Voltus, no evidence supports any personal affiliation because none exists.

Once more, plaintiff carries a heavy burden to justify disqualification.  Relying on nothing but speculation, it has failed to demonstrate that the undersigned or her husband have a material financial stake in the outcome of this case due to Ajax's affiliations and there is no other reason why the undersigned's impartiality might reasonably be questioned.  The motion is denied on this basis.

_____

affiliations, the Court makes note of additional attenuated arguments for recusal that fail to persuade.  First, plaintiff speculates that Natel's foundation was improper and bears on this litigation.  This is false.  Natel was funded in 2009 by a grant from the U.S. Department of Energy ("DOE"), which overlaps with the undersigned's husband's tenure as senior advisor to the U.S. Secretary of Energy.  The undersigned's husband had no personal involvement with awarding a grant to Natel.  However, the DOE's funding of Natel from a decade prior is so attenuated, recusal is not warranted, and the nexus to these proceedings is speculative at best.  Attenuated speculation is insufficient to support recusal.

Second, plaintiff relies on a "Power Technology" article to suggest that Natel was funded by Google in November 2019.  Not only was the article dated over two years before any connection to Ajax, plaintiff misrepresents the substance of the article.  As noted, plaintiff represents that Google funded Natel as shown by the article.  However, the article only indicates that Google funded eleven start-ups.  Unrelated to this funding, the article then proceeds generically to describe five companies that received funding during the COVID-19 pandemic, including Natel.  According to the article, Natel secured funding from two venture funds. It does not establish that Google invested in Natel.  The undersigned and her husband have no knowledge of any investment by Google into Natel.

United States District Court
Northern District of California

### 3. Financial Investments

Lastly, plaintiff criticizes the Court for three investments that the undersigned has disclosed since her nomination to the bench in 2011. These include a Vanguard 500 Index Fund, a Vanguard Total International Stock Index Fund, and the Special Situations Fund. Each is addressed in turn.

#### a. _Vanguard Funds_

Given the substantial overlap concerning the Vanguard 500 Index Fund and Vanguard Total International Stock Index Fund, the Court addresses both together. According to the plaintiff, Google is a Top 10 holding in the Vanguard Index Fund and public sources confirm that it includes significant shares of Nike, Under Armour, Garmin, and Fossil. As to the Vanguard Total International Stock Index, plaintiff alleges that it is publicly known that Samsung and Nikon are significant holdings, and this is significant since Under Armour's accused devices are made by Samsung. With respect to each fund, plaintiff argues that the undersigned somehow actively manages the investments. Ultimately, this argument is divorced from law and fact, and does not justify recusal.[14]

As set forth above, judges must disqualify themselves from a case where it is known that the judge or his or her spouse has "a financial interest in the subject matter in controversy or in a party to the proceeding[.]" 28 U.S.C. § 455(b)(4). However, the same statutory scheme expressly provides that "[o]wnership in a mutual or common investment fund that holds securities is not a 'financial interest' in such securities unless the judge participates in the management of the fund." 28 U.S.C. § 455(d)(4)(i). Similarly, Canon 3C(1)(c) of the Judicial Code of Conduct applicable to judges requires disqualification when the judge knowingly "has a financial interest in the subject matter in controversy or in a party to the proceeding," or when the judge has "any other interest that could be affected substantially by the outcome of the proceeding." Again, pursuant to Canon

---

[14] Plaintiff argues in reply that the defendants should have affirmatively denied the undersigned's financial relationships to aid public perception. Again, the attorney argument, which is devoid of any citation to legal authority, is inconsistent with law placing a heavy burden on plaintiff as the party seeking recusal. Despite having no obligation to respond, defendants went to great lengths to debunk plaintiff's new conspiracy to evade appeal. The truth prevalent in those oppositions is one the plaintiff ignores in lodging new criticism at the defendants.

United States District Court
Northern District of California

3C(3)(c)(i), "ownership in a mutual or common investment fund that holds securities is not a 'financial interest' in such securities unless the judge participates in the management of the fund." What qualifies as a "mutual or common investment fund" is not defined. While not binding, the Committee on Codes of Conduct Advisory Opinion No. 106 is instructive.[15] That opinion lists six factors for consideration: "(1) the number of participants in the fund; (2) the size and diversity of fund investments; (3) the ability of participants to direct their investments; (4) the ease of access to and frequency of information provided about the fund portfolio; (5) the pace of turnover in fund investments; and (6) any ownership interest investors have in the individual assets of the fund." Moreover, "most mutual funds that are registered with the Securities and Exchange Commission and sold to the public as mutual funds will likely meet the criteria above." (*Id.*)

Based upon undisputed facts,[16] the Vanguard investments at issue are prototypical examples falling into the safe harbors for mutual or common investment funds. Both are registered with the SEC and are sold as mutual funds. Each has separate portfolio managers. Both funds are also diversified and extremely large. For instance, the Vanguard 500 Index Fund invests in over 500 stocks across different sectors of the economy. The reach of the Vanguard Total International Stock Index Fund is global, with almost 8,000 stocks across myriad markets and sectors. Investors in both funds do not obtain any ownership interests in the funds' underlying assets, including by directly holding the stocks. Furthermore, despite plaintiff's bald and self-serving suggestion, the undersigned does not manage, direct, or control the funds' investments. Both funds clearly fall within the safe harbor exemption.

Plaintiff has not proffered any legal authority to support its illusory assertion that the investments at issue here are somehow not exempt, especially considering that the undersigned has no control over the management of the large and extremely diversified portfolios. Instead, plaintiff places substantial reliance on the Federal Circuit's recent decision in *Centripetal*

---

[15] *See* Guide to Judiciary Policy, Vol. 2, Pt. B, Sec. 106, https://www.uscourts.gov/sites/default/files/guide-vol02b-ch02_0.pdf.

[16] To the extent the parties' papers ask for the Court to take judicial notice of public information concerning the funds at issue, those requests are granted. The documents are given their appropriate weight.

*Networks, Inc. v. Cisco Systems, Inc*., 38 F.4th 1025 (2022), which is far removed from the circumstances here. In *Centripetal Networks*, a spouse of the judge *directly* held stock in one of the parties to the case and the judge continued to preside over the case once it became known that the spouse had a *direct* interest. *Id*. at 1028-30. Disclosing that interest and placing the stocks in a blind trust *after the fact* did not spare the judge from recusal. *Id*. The Federal Circuit had no issue finding that the direct stock ownership was a financial interest that required disqualification or divestment, and that the district court ran afoul of is statutory obligations by continuing to hold that known interest during the proceedings. Here, there is no "financial interest" within the meaning of section 255 because the investments are exempt funds precluding the undersigned from directly holding stocks of any party to these proceedings.[17] Notably, plaintiff's papers ignore that courts have been in accord in reaching the same finding with respect to Vanguard funds.[18] There is no reason to reach a contrary result now.

Echoing prior findings, the undersigned has no material financial stake in the outcome of

---

[17] Plaintiff argues that the Court must hold stocks in its investments because the Court recused itself without explanation in *Geographic Location Innovations, LLC v. Health Mart Systems, Inc*., No. 21-cv-05155-YGR, Dkt. No. 21 (N.D. Cal. 2021). According to the plaintiff, the Court must have recused because a defendant disclosed that it was owned by McKesson Corporation and McKesson is listed in the funds. The prior recusal did not concern any financial interest.

[18] *See, e.g*., *David v. GMAC Mortg*., *LLC*, No. C11-2914 PJH, 2011 WL 6078272, at *1 (N.D. Cal. Dec. 6, 2011) (concerning Vanguard 500 Index Fund); *Arunachalam v. Pazuniak*, No. 14-cv-05051-JST, Dkt. Nos. 57 at 6 and 57-2 (N.D. Cal. Jan. 08, 2015) (identifying Vanguard investments in motion papers); *Arunachalam v. Pazuniak*, No. 14-cv-05051-JST, 2015 WL 12839126, at *1-2 (N.D. Cal. Feb. 9, 2015) (finding funds within safe harbor); *Pi-Net Int'l, Inc. v. Citizens Fin. Grp., Inc*., No. 12-cv-355-RGA, 2015 WL 1283196, at *4 (D. Del. Mar. 18, 2015) (concerning Vanguard Institutional Index); *Bank of Am., N.A. v. Martinson*, No. 10-cv-10-WMC, 2013 WL 12234207, at *1 (W.D. Wis. Jan. 3, 2013) (concerning Vanguard Institutional Index); *Huebner v. Midland Credit Mgmt*., No. 14-6046, 2015 WL 1966280, at *3 (E.D.N.Y. May 1, 2015) (concerning Vanguard Group, Inc. portfolios).

In order to create an impression that judicial ethics have been substantially over-hauled to cast doubt on this line of authority, plaintiff relies upon the passage of the Courthouse Ethics and Transparency Act, Pub. L. No. 117-125, 136 Stat. 1205 (2022), which generally modified the accessibility and timeliness of financial disclosures and potential conflicts of interest. The backdrop to this law was the failure of certain judges to disclose direct stock holdings in cases where they presided. However, the law did not change section 455. The undersigned holds no such interests that would have required further disclosure in these proceedings and has timely filed financial disclosures consistent with the undersigned's obligations.

United States District Court
Northern District of California

1  this case because of the Vanguard investments and there is no other reason why her impartiality

2  might reasonably be questioned.  The motion for recusal is denied on this basis.

3                          **b.**      *Special Situations Fund*

4          Finally, plaintiff notes that the undersigned's 2020 Financial Disclosure identifies the

5  Special Situations Fund as an investment.  In short, plaintiff asserts that the Special Situations

6  Fund is opaque and that "[a] huge portion of this opaque investment could be in Big Tech stocks

7  like the defendants in this case."  (Dkt. No. 366 at 23.)  Because of this investment, plaintiff

8  argues that the Court should be recused from this case and all other "Big Tech" cases.  Again, this

9  argument fails.

10          To begin, the Court sets aside the obvious point that plaintiff does not have standing to

11  challenge the undersigned's ability to preside over other cases.  While plaintiff has no actual

12  evidence and proffers only speculation, the Court notes for transparency purposes that the Special

13  Situations Fund is managed by the McKinsey Investment Office ("MIO") and functions in essence

14  like a mutual fund where the undersigned has no knowledge or control of the investments being

15  made.  The only choice is deciding how much to invest.

16          Pursuant to MIO's public website, it is "a subsidiary of McKinsey & Company and a

17  registered investment adviser regulated by the Securities and Exchange Commission in the US,"

18  and it "invest[s] the retirement assets for the global McKinsey pension plans."[19]  Of note, "MIO's

19  investment operations are intentionally separated from McKinsey's consulting operations.  *MIO*

20  *does not trade individual stocks or bonds of any public or private company anywhere in the world*,

21  except in the specific case of credit-default swaps for counterparty hedging.  Our macro trading

22  strategies involve trading in major asset classes such as sovereign debt, commodities, foreign

23  exchange, equity indices, and credit indices."  (Emphasis supplied.)  Thus, investors such as the

24  undersigned do not directly own stocks, however, like the Vanguard funds discussed above,

25  individual unknown funds within the Special Situations Fund may separately hold securities.

26  Investors do not directly hold public stocks, do not have knowledge of the particular assets that the

27  

28            [19]  *See* https://miopartners.com/.

fund invests in, are denied access to that information when requested, and have no influence on the assets that are pursued. The undersigned and her husband have no control over the fund, have no reason to question the public representations made by MIO on its website, and have no knowledge of any underlying assets directly being held in our names. Thus, plaintiff's suggestion that the fund lacks any public transparency and is comprised of the defendants' stock is misplaced.[20] The examples outlined in Advisory Opinion No. 106 further demonstrate that investments into a mutual fund such as this is appropriate where there is no information available to investors about the assets and there is no direct control in the investments.

Again, the undersigned has no material financial stake in the outcome of this case because of the Special Situations Fund and there is no other reason why her impartiality might reasonably be questioned. The motion for recusal is denied on this basis.

## IV.  CONCLUSION

As is demonstrated by this Order, the pending motion lacks any substantive basis tethered to law or fact to support recusal or vacatur. Thus, one can only surmise that plaintiff and its lawyers brought the motion for tactical advantage. The Court will not reward such conduct. The motion is denied.

This Order terminates Docket Number 366.


**IT IS SO ORDERED.**


Dated: February 15, 2023

YVONNE GONZALEZ ROGERS
UNITED STATES DISTRICT COURT JUDGE

---

[20] Plaintiff suggests that holding this investment is improper because a nominee agreed to divest her interest in the fund in connection with her confirmation to the Office of Management and Budget ("OMB"). The relevance for plaintiff's theory is attenuated. OMB personnel are not governed by section 455 or the Judicial Code of Conduct, a point plaintiff concedes in reply. In fact, the evidence relied upon confirms that the nominee was not provided with information concerning assets when requested.

18