1
2
3
4

**RESHMA KAMATH, PLAINTIFF**
700 El Camino Real, Suite 120, #1084,
Menlo Park, California 94025, United States
Ph.: 650 257 0719, E.: reshmakamath2021@gmail.com
*in propria persona*

5

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

6

RESHMA KAMATH,

7

Plaintiff,

8

v.

9

10

ANGIE MUELEMAN, WILLIAM ALSUP, ROSE MAHER, THOMAS HIXSON, JAMES LI, LILAW, INC., DYLAN WISEMAN, BUCHALTER, APC, YVONNE GONZALEZ-ROGERS, JEFFREY WHITE, CHARLES BREYER, ALEXANDRA WHITE, SUSAN VAN KALEN, CALIFORNIA NORTHERN DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA STANDING COMMITTEE ON PROFESSIONAL RESPONSIBILITY, NINTH CIRCUIT COURT OF APPEALS, AND, DOES 1-10, INCLUSIVE,

11
12
13
14
15
16
17
18
19
20
21

Defendants.

22
23
24
25
26
27
28

Case No.: 5:23-cv-06494-PCP

[*Assigned to Honorable Judge P. Casey Pitts, San Jose Courthouse, Courtroom 8, 4th Floor 280 South First Street, San Jose, CA 95113.*]

AMENDED-COMPLAINT FOR:

I.    INJUNCTIVE RELIEF
II.   DEFAMATION *PER SE*-LIBEL
III.  RACIAL DISCRIMINATION UNDER 42 U.S.C. SECTION 1983
IV.   GENDER DISCRIMINATION UNDER 42 U.S.C. SECTION 1983
V.    DECLARATORY RELIEF
VI.   DEFAMATION *PER SE*–SLANDER
VII.  NEGLIGENT HIRING, RETENTION, SUPERVISION, AND TRAINING.

DEMAND FOR JURY TRIAL

AMENDED-COMPLAINT

RESHMA KAMATH

1

**AMENDED-COMPLAINT**

**INTRODUCTION**

1. RESHMA KAMATH, [herein, "PLAINTIFF" and/or "RESHMA KAMATH"], is plaintiff in this matter.

2. IF YOU CAN JUST IMAGINE, PLAINTIFF RESHMA KAMATH WON HER FIRST JURY TRIAL WITHOUT THE HELP OF ANY OTHER ATTORNEY – NOT EVEN A TINY BIT OF HELP.

3. WHETHER AS A WOMAN, AS AN INDIAN WOMAN, AND/OR AS A SOLE PROPREITOR, WINNING HER FIRST JURY TRIAL 8-0 - WITH A UNANIMOUS JURY VERDICT - IS DEFINITELY NOT SOMETHING EVEN ONE DEFENDANT-ATTORNEY/JUDICIAL OFFICER IN THIS CASE CAN BOAST OF (WHETHER THAT GETS STRUCK WITH DEFENDANT CAND IS ANOTHER RACIST PREJUDICIAL PHENOMENON).

4. PLAINTIFF RESHMA KAMATH STOOD FIRST IN HER CLASS (AND THAT CONTINUED FOR DECADES (UNTIL THE WHITE LEGAL PROFESSION), EARNING ACCOLADES WHEREVER SHE WENT, ENGAGING IN LEADERSHIP/DIVERSITY INITIATIVES, AND MEETING PEOPLE/EXPERIENCING CULTURES THAT THE SMALL-MINDED DEFENDANTS IN THIS CASE CAN ONLY IMAGINE.

5. PLAINTIFF RESHMA KAMATH is suing DEFENDANTS ANGIE MUELEMAN, WILLIAM ALSUP, ROSE MAHER, THOMAS HIXSON, JAMES LI, LILAW, INC., DYLAN WISEMAN, BUCHALTER, APC, CHARLES BREYER, ALEXANDRA WHITE, JEFFREY WHITE, YVONNE GONZALEZ ROGERS, CALIFORNIA NORTHERN DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA STANDING COMMITTEE ON PROFESSIONAL RESPONSIBILITY, NINTH CIRCUIT COURT OF APPEALS, AND, DOES 1-10, INCLUSIVE, for displaying, INCLUDING BUT NOT

AMENDED-COMPLAINT

RESHMA KAMATH

LIMITED TO:

(i) ANTI-INDIAN sentiments;

(ii) HINDU PHOBIA, and,

(iii) ANTI-IMMIGRANT sentiments, *inter alia*.

6.   PLAINTIFF RESHMA KAMATH WANTS EACH OF THE DEFENDANTS TO ADMIT (AS THEY MAKE NON-WHITE PEOPLE SUCH AS INDIANS/INDIAN-AMERICANS IN THEIR COURTROOM) THAT THE DEFENDANTS ENGAGED IN A WRONG-DOLING OF A RACIAL AND MISOGYNISTIC NATURE.

7.   THAT EVEN WHEN SUCH RACIAL WRONG-DOING WAS BROUGHT TO THE ATTENTION OF THE DEFENDANT-PERPETRATORS, THE DEFENDANTS IN CHARGED DID NOTHING. IN FACT, THEY GOT WORSE OR REMAINED SILENT. SIGNS OF A TYPICAL PERPERTATOR.

8.   WHAT THE DEFENDANTS DO NOT REALIZE IS THAT PLAINTIFF RESHMA KAMATH WAS THE ONLY INDIAN-AMERICAN WOMAN IN THE ENTIRE COURTROOM.

9.   WHAT THE DEFENDANTS DO NOT REALIZE IS THAT PLAINTIFF RESHMA KAMATH WAS THE ONLY INDIAN-AMERICAN WOMAN ATTORNEY LITIGATING IN THE ENTIRE COURTROOM. WHAT THE DEFENDANTS DO NOT REALIZE IS THAT PLAINTIFF RESHMA KAMATH WAS THE ONLY INDIAN-AMERICAN WOMAN IMMIGRANT ATTORNEY LITIGATING IN THE ENTIRE COURTROOM. [ DEFENDANTS CAN READ INTO THOSE TERMS WHATEVER MEANING AND INSIGHT THEY HAVE ].

///

///

///

AMENDED-COMPLAINT



3

**PARTIES/ FACTUAL BACKGROUND**

**PLAINTIFF RESHMA KAMATH**

10. PLAINTIFF RESHMA KAMATH is a lawyer licensed in the STATE OF CALIFORNIA.

11. Whether or not, PLAINTIFF RESHMA KAMATH practices law in the STATE OF CALIFORNIA, PLAINTIFF will ensure this case remains as a personal defamation, and personal discrimination against her based on race and gender. For the past three years, PLAINTIFF RESHMA KAMATH had resided in the STATE OF ARIZONA. PLAINTIFF RESHMA KAMATH operates with a mail-box address in MENLO PARK, CALIFORNIA for her work as a lawyer in CALIFORNIA. PLAINTIFF RESHMA KAMATH has had to deal with the following White/Caucasian individuals, *inter alia*, during the course of one lawsuit:

WILLIAM ALSUP

THOMAS HIXSON

ROSE MAHER

ANGIE MUELEMAN

DANIEL PETERSON

TAMARA RIDER

RICHARD LAMBERT

DARALYN DURIE

JAMES SCHURZ

JEREMY FOGEL.

12. DEFENDANTS had to deal with ONE INDIAN-AMERICAN WOMAN"

RESHMA KAMATH. PLAINTIFF RESHMA KAMATH decided to initiate this case in the CAND publicly for the same reason that DEFENDANTS so freely defame and make derogatory statements at CAND and on the CAND court docket. BESIDES, PLAINTIFF RESHMA KAMATH HAS NO FAITH IN THE CJP.

AMENDED-COMPLAINT



13. In May 1999, RESHMA KAMATH moved to the UNITED STATES OF AMERICA from INDIA at the age of fourteen years.

14. In India, RESHMA KAMATH placed the top of her class having studied in a top-rated convent girl's school.

15. In India, RESHMA KAMATH was part of her volleyball and table-tennis team even captaining it.

16. In India, RESHMA KAMATH won many awards for her education as well as extra-curricular activities. In India, RESHMA KAMATH helped handicapped and disabled individuals, and had participated in tree-planting initiatives.

17. After moving to the United States, RESHMA KAMATH continued to excel in her school work and sports. RESHMA KAMATH was part of JUNIOR VARSITY and VARSITY high-school sports, such as tennis and badminton. RESHMA KAMATH has also practiced martial arts, and kick-boxing. All in all, RESHMA KAMATH is highly professional, global, and has made people from literally all walks of life on a personal front without any sheltered life.

18. Graduating *SUMMA CUM LAUDE* with a dual degree in psychology and global studies, as well as studying abroad for one year in post-apartheid SOUTH AFRICA in 2007, RESHMA KAMATH studied family law, international law, corporate law and isiZULU.

19. This was part of a GOLDEN KEY INTERNATIONAL HONOR SOCIETY scholarship, as well as other scholarships that RESHMA KAMATH had won during her collegiate years.

20. While in college, RESHMA KAMATH was part of AMERICORPS working for Chinese and Vietnamese immigrants/senior citizens, as well as diversity initiatives as advocate for ASIAN/ASIAN PACIFIC ISLANDER groups on campus.

21. RESHMA KAMATH was part of the residential life programs, and participated in Indian cultural dance, debate and volunteer activities on campus.

22. RESHMA KAMATH was even chosen as a STUDENT LEADER to go to MEXICO to

AMENDED-COMPLAINT

participate in an LOS NINOS program helping local women build sustainable initiatives.

23. These paragraphs are downplaying the effort, the number of activities, work and studying that RESHMA KAMATH did.

24. RESHMA KAMATH moved to SOUTH KOREA – supposedly for one year to teach English, and thereafter, being interested in human rights and international development [having contemplated Peace Corps] joined the best university in SOUTH KOREA called SEOUL NATIONAL UNIVERSITY for a graduate degree in International Studies with International Co-operation. There too RESHMA KAMATH won several awards, participated in a plethora of activities, and graduated HIGH HONORS.

25. RESHMA KAMATH was also selected to be a part of an environmental initiative to attend a graduate-program in CAMBODIA, as well as selected graduate leaders in JAPAN.

26. After attending law school, which was quite reflecting of the legal profession and California courts, RESHMA KAMATH who always wanted to become a lawyer finally decided to pursue her endeavors and get licensed.

27. In January-March 2021, RESHMA KAMATH became a lawyer licensed in the STATE OF CALIFORNIA.

28. In 2021, RESHMA KAMATH took her OATH and was SWORN in as a lawyer in YUMA, ARIZONA. RESHMA KAMATH had also taken her STATE BAR EXAM while she was residing in YUMA, ARIZONA.

29. In 2021, RESHMA KAMATH decided to be a sole proprietor and thereafter, worked under d/b/a LAW OFFICE OF RESHMA KAMATH.

30. In 2021, RESHMA KAMATH was retained in a case where the above-named DEFENDANTS were litigants.

31. In 2023, RESHMA KAMATH appeared for the JURY TRIAL, and won a UNANIMOUS JURY VERDICT in an eight-person jury comprised of three African-American jury members,

AMENDED-COMPLAINT

and seven women jurors who saw through the façade of the opposing attorney, DEFENDANT JAMES LI, while the jury made an evidentiary decision about the case in favor of clients of PLAINTIFF RESHMA KAMATH.

32.     Neither is above classifieds or an ad for match, it is only to provide some background into plaintiff RESHMA KAMATH's LIFE whatever and most of it is missing.

**DEFENDANT ANGIE MUELEMAN**

33.     DEFENDANT ANGIE MUELEMAN is the clerk for DEFENDANT WILLIAM ALSUP.

34.     DEFENDANT MUELEMAN is allegedly a White/Caucasian woman.

35.     DEFENDANT MUELEMAN allowed two White/Caucasian attorneys, TAMARA RIDER and DANIEL PETERSON to tamper with the evidence box.

36.     DEFENDANT MUELEMAN allowed two White/Caucasian attorneys, TAMARA RIDER and DANIEL PETERSON to tamper with the evidence box - after RESHMA KAMATH had signed on behalf of her clients the witness form.

37.     DEFENDANT MUELEMAN **failed to inform the court** that the two White/Caucasian attorneys, TAMARA RIDER and DANIEL PETERSON from the office of DEFENDANT LILAW, INC. had removed an ENVELOPE with USB attached to an EXHIBIT in the evidence box.

38.     DEFENDANT MUELEMAN was **witness to evidence tampering** of DEFENDANT LILAW, INC.'s attorneys, TAMARA RIDER and DANIEL PETERSON.

39.     More recently, DANIEL PETERSON appeared as RICHARD LAMBERT on a Zoom hearing in a concurrent state court action.

40.     When PLAINTIFF RESHMA KAMATH, upon signing the evidence box form seated at counsel table, questioned DEFENDANT LILAW, INC.'s attorneys, TAMARA RIDER and DANIEL PETERSON, they ignored her.

41.     DEFENDANT LILAW, INC.'s attorneys, TAMARA RIDER and DANIEL PETERSON had

AMENDED-COMPLAINT

a white envelope in their hands allegedly with a USB. No permission from the court was sought.

42. PLAINTIFF RESHMA KAMATH has personal knowledge of this as a witness to the entire incident. The CAMERAS project can make this clear that DEFENDANT LILAW, INC.'s attorneys, TAMARA RIDER and DANIEL PETERSON removed evidence from the evidence box – not only without the Court's permission; but also, after PLAINTIFF RESHMA KAMATH's inspection and signing of the form.

43. DEFENDANT MUELEMAN failed to notify the Court of any of this off and/or on the record.

44. DEFENDANT MUELEMAN knows how to work alongside WHITE ATTORNEYS' favor.

45. DEFENDANT MUELEMAN negligently misled not only the public via the docket, but also the Ninth Circuit Court of Appeals as to who the defense counsel for APPELLEES was, i.e., RESHMA KAMATH only.

46. PLAINTIFF RESHMA KAMATH has a screen-capture of the entire docket where DEFENDANT MUELEMAN and DEFENDANT ALSUP falsely from November 2023, and even to this undersigned date have some unknown WHITE, MALE attorney as a winning attorney for defendants. This is defamation.

47. DEFENDANT MUELEMAN negligently – for over two years – allowed a "terminated" White/Caucasian attorney, Brandon from DEFENDANT BUCHALTER APC appear as an attorney for defendants on DEFENDANT NORTHERN DISTRICT OF CALIFORNIA docket, as well as the DEFENDANT NINTH CIRCUIT COURT OF APPEALS.

**48.** Since November 2021, RESHMA KAMATH was the ONLY COUNSEL for defense, and at trial in July 2023, **RESHMA KAMATH WON as a SOLE-PROPREITOR.**

49. There were times when DEFENDANT MUELEMAN would signal to RESHMA KAMATH to remove her mask – yet nothing was on the record because she did not speak it. This jeopardized RESHMA KAMATH's health and safety in the courtroom.

AMENDED-COMPLAINT



**50.     DEFENDANT MEULMAN FALSIFIED – on the record – to DEFENDANT ALSUP on the last day of trial that a MOTION FOR SANCTIONS was prior brought.**

51.     DEFENDANT MEULMAN's EVIDENCE TAMPERING and FALSIFYING INFORMATION TO THE COURT is *ULTRA VIRES*, and does NOT protect her under any kind of ABSOLUTE IMMUNITY.

## DEFENDANT WILLIAM ALSUP

52.     DEFENDANT WILLIAM ALSUP is an ARTICLE III standing judicial officer in the NORTHERN DISTRICT OF CALIFORNIA.

53.     DEFENDANT ALSUP is allegedly a White/Caucasian male.

54.     DEFENDANT ALSUP used the vulgar word, "SNAFU" in his most recent ORDER.

55.     DEFENDANT ALSUP's vulgar word, "SNAFU" is an abbreviation for "SITUATION NORMAL ALL FUCKED UP." Such a statement is a SLUR.

56.     DEFENDANT ALSUP – at the pretrial conference – stared at RESHMA KAMATH's derriere and made a disgusting face.

57.     DEFENDANT ALSUP would make statements paraphrased such as to save you from "HEARTBURN" to RESHMA KAMATH. DEFENDANT ALSUP is NOT a doctor – and such a statement is a SLUR.

58.     DEFENDANT ALSUP would make statements paraphrased such "UNPROFESSIONAL" to RESHMA KAMATH. Associating such negative words and comments to a woman of color is a SLUR.

59.     DEFENDANT ALSUP made a comment paraphrased to the attorneys, "DON'T TELL ME YOU'RE IN INDIA."

60.     Why India was brought up when there was no mention of "India" on and off the record, and/or about "India" on the docket – prior to DEFENDANT ALSUP's utterance of this at pre-trial and trial, is a racially-motivated statement of DEFENDANT ALSUP.

AMENDED-COMPLAINT

RESHMA Kamath

61.     This is akin to saying out of nowhere in a courtroom to Mexican/Latin-American attorneys, "Don't tell me you're in Mexico." Has DEFENDANT ALSUP EVER MADE SUCH COMMENTS TO THIS LATIN-AMERICAN STAFF OR LATIN-AMERICAN ATTORNEYS WHEN THEY APPEAR BEFORE HIM.

62.     THERE IS A REASON DEFENDANT ALSUP KNOWS HOW TO PLAY TO THE POPULAR SENTIMENTS TO ACHIEVE WHAT HE WANTS.

63.     At the end of his career, DEFENDANT ALSUP knows that no matter what he does or says to PLAINTIFF RESHMA KAMATH, no one will ever do anything to him. Moreover, he will not achieve anything in terms of school, degrees, jobs, or status.

**64.     Until PLAINTIFF RESHMA KAMATH** filed a draft version of the Complaint in and around SEPTEMBER 24, 2023 on the docket, where PLAINTIFF brought up this comment about "India" from DEFENDANT ALSUP, **nothing prior on and off the docket/record had a thing about "India."**

**65.     DEFENDANT ALSUP's comments in the middle of a case that has no bearing to India are derogatory, offensive and insulting.**

**66.     DEFENDANT ALSUP's SLUR – ASSOCIATING NEGATIVE STATEMENTS AND NEGATIVE COMMENTS TO AN INDIAN-AMERICAN WOMAN, I.E., PLAINTIFF RESHMA KAMATH ARE DEFENDANT ALSUP's RACIALLY-MOTIVATED SLURS AGAINST INDIANS/INDIAN-AMERICANS.**

**67.     DEFENDANT ALSUP's comments are a mouthpiece for the growing hatred towards INDIANS in the UNITED STATES.**

68.     DEFENDANT ALSUP's SLUR **DEFENDANT ALSUP's SLUR – ASSOCIATING NEGATIVE STATEMENTS AND NEGATIVE COMMENTS TO AN INDIAN-AMERICAN WOMAN, I.E.,** about "MS. KAMATH's OVERSIGHT" was further RACIALLY and MISOGYNISTICALLY DEROGATORY.

AMENDED-COMPLAINT



69. PLAINTIFF RESHMA KAMATH was not the appellate attorney for the prior clients, because as usual, similar to DEFENDANTS JAMES LI and LILAW, INC., they also delayed the case and matter harassing PLAINTIFF RESHMA KAMATH.

70. Such DEROGATORY comments from DEFENDANT ALSUP came during and after PLAINTIFF RESHMA KAMATH had won the UNANIMOUS JURY TRIAL in a STELLAR and MAGNIFICENT display of TRIAL ADVOCACY.

71. None of DEFENDANT ALSUP's RACIAL-SLUR comments were grounded in code and law.

72. DEFENDANT ALSUP statements in written and oral format were derogatory – they're not banter.

73. DEFENDANT ALSUP was also particularly protective of a White woman walking carefully from the podium to the attorney table. DEFENDANT ALSUP failed to display the same carefulness towards INDIAN-AMERICAN WOMAN ATTORNEY, I.E., RESHMA KAMATH.

74. That preceding statement is pretty much how men from all cultures, races, and ethnic backgrounds treat White women versus every other woman of color.

75. DEFENDANT ALSUP was discussing his hiking, photography and knee ache with DEFENDANT LILAW, INC.'s attorneys (DANIEL PETERSON and TAMARA RIDER) right after the two had tampered with the evidence box; and right before the jury was to be reconvened. This was right before Ms. RIDER brought up the sanctions of DEFENDANT HIXSON, and DEFENDANT MEULMAN had FALSIFIED to DEFENDANT ALSUP about a motion for sanctions that did not exist – thus further COLORING NEGATIVELY the view of DEFENDANT ALSUP.

76. DEFENDANT ALSUP looked visibly displeased when clients that PLAINTIFF RESHMA KAMATH had represented had WON the UNANIMOUS JURY-VERDICT 8-0.

77. In PLAINTIFF's first telephonic appearance before him, DEFENDANT ALSUP had prior

AMENDED-COMPLAINT



threatened to report PLAINTIFF RESHMA KAMATH to the STATE BAR. What for is something very odd and was racially-motivated particularly against Indians and Indian-Americans.

78.  DEFENDANT ALSUP was forcing PLAINTIFF RESHMA KAMATH to sign a stipulation that the prior attorneys DEFENDANTS BUCHALTER and DEFENDANTS DYLAN WISEMAN had decided. However, DEFENDANTS BUCHALTER and DYLAN WISEMAN did NOT sign their own highly prejudicial stipulation.

79.  None of the prior attorneys DEFENDANTS BUCHALTER and DEFENDANTS DYLAN WISEMAN even share the contents of the stipulation with PLAINTIFF. There is NO litigation privilege as to this.

80.  Without informing PLAINTIFF RESHMA KAMATH of the terms of such an ATTORNEYS' EYES-ONLY STIPULATION, and the scope of it, DEFENDANT ALSUP was telephonically threatening and forcing PLAINTIFF RESHMA KAMATH to sign the stipulation.

81.  DEFENDANT ALSUP's THREATS are RACIALLY-MOTIVATED against PLAINTIFF RESHMA KAMATH. It is GENDER BIAS because it is against a woman of color, particularly an attorney of color who is female and Indian. Thus, RACIAL-MISOGYNY.

82.  DEFENDANT ALSUP is RACIALLY-MISOGYNISTIC.

83.  DEFENDANT ALSUP is RACIALLY-MISOGYNISTIC towards RESHMA KAMATH.

84.  DEFENDANT ALSUP is RACIALLY-MISOGYNISTIC towards RESHMA KAMATH, BECAUSE SHE IS INDIAN.

85.  DEFENDANT ALSUP is RACIALLY-MISOGYNISTIC towards RESHMA KAMATH, BECAUSE SHE IS AN INDIAN WOMAN.

86.  DEFENDANT ALSUP's SANCTIONS and WORDS in his ORDERS are RACIALLY-MISOGYNISTIC against PLAINTIFF RESHMA KAMATH BECAUSE SHE IS AN INDIAN WOMAN.

AMENDED-COMPLAINT

87. DEFENDANT ALSUP'S ORDER OF OVER TWO MILLION IN ATTORNEYS' FEES TO A WHITE, MALE ATTORNEY, DEFENDANT DYLAN WISEMAN, AND WHITE SHOE LAW FIRM, IS RACIALLY-MISOGYNISTIC.

88. DEFENDANT ALSUP'S ORDER OF OVER TWO MILLION IN ATTORNEYS' FEES TO A WHITE, MALE ATTORNEY, DEFENDANT DYLAN WISEMAN, AND WHITE SHOE LAW FIRM, IS RACIALLY-MISOGYNISTIC, BECAUSE NEITHER DEFENDANT WISEMAN WROTE THE MOTION, NOR DID HE PLEAD FOR ATTORNEYS' FEES.

89. DEFENDANT ALSUP'S ORDER OF OVER TWO MILLION IN ATTORNEYS' FEES TO A WHITE, MALE ATTORNEY, DEFENDANT DYLAN WISEMAN, AND WHITE SHOE LAW FIRM, IS RACIALLY-MISOGYNISTIC, BECAUSE PLAINTIFF RESHMA KAMATH WROTE THE MERITORIOUS MOTION (WHICH IT IS OKAY IF DENIED) THEN, WHAT BASIS DOES DEFENDANT ALSUP HAVE TO GRANT A FIVE-PAGE JOINDER TO THAT DENIED MOTION. NO BASIS. ONLY BASIS IS RACIALLY-MOTIVATION TO AWARD WHITE ATTORNEYS MORE MONEY.

90. DEFENDANT ALSUP'S ORDER OF OVER TWO MILLION DOLLARS IN ATTORNEYS' FEES TO A TWO TO FIVE-PAGE JOINDER OF A WHITE, MALE ATTORNEY, DEFENDANT WISEMAN IS RACIALLY-MISOGYNISTIC.

91. DEFENDANT ALSUP has a biography on civil rights and helping minorities, such as African-Americans, Native-Americans (constantly referred to as Indians) and others.

92. In discovery, PLAINTIFF RESHMA KAMATH would like to know several things about this DEFENDANT-JUDICIAL OFFICER ALSUP, as well as the other DEFENDANT-JUDICIAL OFFICERS named in this amended Complaint. Such are including but not limited to:

**a. if they can identify how many Indian/Indian Americans they worked with (zilch to 1)**

**b. if they can identify how many Indian/Indian American women they worked with (zilch to 1)**

AMENDED-COMPLAINT



13

**c.** if they can identify how many Indian/Indian American women attorneys they worked with when the defendant-judicial-officers were practicing as lawyers.

**d.** if they can identify how many Indian/Indian American attorneys they worked with when the defendant-judicial-officers were practicing as lawyers. (one encompasses the other).

**e.** if they can identify how many Hindu women attorneys they worked with when the defendant-judicial-officers were practicing as lawyers.

**f.** if they can identify how many Indian/Indian American women the defendant-judicial-officers worked with in subordinate roles such as clerks, secretaries, and staff. (mingling with waiter-staff at Indian restaurants doesn't count).

**g.** for a population and demography of over one billion Indian/Indian Americans, if they can identify what they know about Indian/Indian American culture without googling (aside from stereotypes about Indian/Indian Americans).

**h.** if they can identify how many Indian/Indian American close friends they have had (not acquaintances like the doctor who treats them).

**i.** if they can identify what they know about how Indian/Indian American women are treated within Indian culture in the United States and outside of it.

**j.** if they can identify what they know about how Indian/Indian American jurors they have had.

**k.** if they can identify how many Indian/Indian American female judges practice in the CAND courthouse.

**m.** if they can identify about how many women of color sole proprietors appear before them annually.

**n.** if they can identify how many women sole proprietors appear before them annually.

**o.** if they can identify how many women of color sole proprietors appear before them

AMENDED-COMPLAINT

annually and win at trial.

p. if they can identify how many Indian women of color sole proprietors appear before them annually.

q. if they can identify how many Indian women of color sole proprietors appear before them annually and win at trial.

r. if they can identify how many Indian women of color sole proprietors have a motion granted before them annually.

s. if they can identify how many women of color sole proprietors have a motion granted before them annually.

t. if they can identify when they have granted a woman of color's motion, how many times was A WHITE ATTORNEY, AND/OR MALE ATTORNEY co-counseling with that woman of color.

u. if they can identify how much they know of the bias/prejudice of INDIAN/INDIAN-AMERICAN MEN towards Indian/Indian-American women.

93. DEFENDANT ALSUP was also alerted to how a White guy appeared on the docket until the end, BRANDON CARR that DEFENDANT ALSUP's clerk, DEFENDANT ANGIE MEULEMAN HAD FAILED TO REMOVE from the docket.

94. **DEFENDANT ALSUP LIKES TO GIVE FREE CREDIT TO WHITE ATTORNEYS FOR WORK THEY DID NOT PERFORM AND FOR WORK THAT WOMEN OF COLOR SUCH AS PLAINTIFF RESHMA KAMATH DID.**

95. **THAT FREE CREDIT THAT DEFENDANT ALSUP HAVE TO A WHITE GUY FOR PLAINTIFF RESHMA KAMATH'S WORK CARRIED OVER TO DEFENDANT NINTH CIRCUIT COURT OF APPEAL ON ITS DOCKET.**

96. **DEFENDANT ALSUP IS GIVING FREE CREDIT TO WHITE, MALE ATTORNEYS FOR POSTERITY FOR WORK COMPLETELY PERFORMED BY PLAINTIFF**

AMENDED-COMPLAINT

RESHMA KAMATH

RESHMA KAMATH FROM NOVEMBER 2021.

97. DEFENDANT ALSUP MAY PRETEND HE IS A CHAMPION OF AFRICAN-AMERICAN CIVIL RIGHTS AND REPARATIONS, BUT WHEN IT COMES TO HIS COURTHOUSE, DEFENDANT ALSUP <u>COULD NOT EVEN AWARD ATTORNEYS' FEES TO A WOMAN OF COLOR SOLE PRACTITIONER FOR HER WORK.</u>

98. ONLY WAY DEFENDANT ALSUP AWARDS ATTORNEYS' FEES TO WOMEN OF COLOR ARE WHEN WHITE ATTORNEYS ARE ADJOINING THEM.

99. DEFENDANT ALSUP'S LIP-SERVICE IS APPALLING. IT WAS ONLY FOR HIM TO GET AHEAD IN HIS CAREER AND ACHIEVE HIS ARTICLE III STANDING.

100. DEFENDANT ALSUP has DEMONSTRATED RACIAL HATRED to PLAINTIFF RESHMA KAMATH.

101. PLAINTIFF RESHMA KAMATH was the ONLY COUNSEL for DEFENSE since NOVEMBER 2021 and THE ENTIRE TRIAL.

102. PLAINTIFF RESHMA KAMATH WON AN EIGHT-PERSON UNANIMOUS JURY VERDICT.

103. DEFENDANT ALSUP ORDERING OVER TWO MILLION DOLLARS TO A WHITE, MALE ATTORNEY DEFENDANT DYLAN WISEMAN <span style="color:red">WHO DID NOT DO ANY TRIAL WORK AND WAS TERMINATED FROM THE MATTER SINCE NOVEMBER 2021</span>, BUT ORDERING NOTHING TO PLAINTIFF RESHMA KAMATH, STEMS FROM DEFENDANT ALSUP'S RACIAL HATRED.

104. THAT ENTIRE ORDER OF DEFENDANT ALSUP STEMMED FROM PLAINTIFF RESHMA KAMATH'S MOTION FOR ATTORNEYS' FEES.

105. PLAINTIFF RESHMA KAMATH ALSO GOT FELT UP IN COURT, AND HOW DID DEFENDANT ALSUP WHO PRETENDS TO CHAMPION FOR WOMEN MINORITIES NOT SEE OR KNOW THAT IN HIS COURTROOM.

AMENDED-COMPLAINT

106. **DEFENDANT ALSUP MAKING RACIAL COMMENTS SUCH AS "Ms. Kamath's oversight" when DEFENDANT ALSUP had knowledge that PLAINTIFF RESHMA KAMATH's scope of work pursuant to her retainer agreement was only until the motion for attorneys' fees.**

107. **DEFENDANT ALSUP is highly RACIST, because DEFENDANT ALSUP believes NON-WHITE WOMEN COUNSEL are greedy, lazy, unprofessional, have oversights, heartburn, and a series of other NEGATIVE COMMENTS associated with RACIAL HATRED. DEFENDANT ALSUP then along with another WHITE, MALE JUDGE, DEFENDANT HIXSON referred PLAINTIFF RESHMA KAMATH for PROFESSIONAL MISCONDUCT to DEFENDANT COMMITTEE OF THE STATE BAR.**

108. **PLAINTIFF RESHMA KAMATH is in her thirties and will not let RACIST MEN such as DEFENDANT ALSUP mistreat her as a doormat and write the NARRATIVE on the court docket about PLAINTIFF RESHMA KAMATH.**

109. **PLAINTIFF RESHMA KAMATH is in her thirties and will not let RACIST WHITE PEOPLE in the UNITED STATES write a NARRATIVE about PLAINTIFF RESHMA KAMATH.**

110. In 2021, there was a telephonic-call with DEFENDANT WILLIAM ALSUP. There he threatened RESHMA KAMATH repeatedly, and that he would report her to the STATE BAR. It was quite disturbing, because there was no basis for it.

111. In 2023, at the final pre-trial hearing, DEFENDANT WILLIAM ALSUP made a comment about "INDIA."

112. Nothing on- and off-the-record had anything to do with "INDIA." The comment came out of nowhere. Nothing in the entire court docket, and/or conversations had a thing to do with "INDIA." The CAMERAs project with audio and video can be produced for this.

AMENDED-COMPLAINT

113.   In 2023, after the final pre-trial hearing, while DEFENDANT ALSUP was walking into his chambers, DEFENDANT WILLIAM ALSUP looked at Plaintiff RESHMA KAMATH while she was getting water from a dispenser placed in the middle of the room, and looked at her backside making a disgusted facial expression.

114.   In 2023, at the trial, in the presence of DEFENDANT WILLIAM ALSUP, Plaintiff RESHMA KAMATH was assaulted where an interpreter touched her shoulder/neck area in a massaging motion, and then touched her buttock area with his hand. This was without RESHMA KAMATH's consent, and the interpreter had no friendly relationship with RESHMA KAMATH whatsoever.

115.   In fact, during several trial practice and coaching session, the interpreter was demeaning and condescending to RESHMA KAMATH. Moreover, RESHMA KAMATH does not like any unknown stranger male touching of her body.

116.   In 2023, at the trial, DEFENDANT WILLIAM ALSUP took no action. He may have even ignored it.

117.   In 2023, at the trial, DEFENDANT WILLIAM ALSUP always was eager to protect the opposing white female attorney in the courtroom while walking to and from the podium to the table. 42.      That kind of courtesy and protective behavior was not afforded to Plaintiff RESHMA KAMATH.

118.   In 2023, at the trial, and thereafter, DEFENDANT WILLIAM ALSUP often made comments to his clerk, staff and to other judges about "fat" "kid" "young" "unprofessional" "dangerous" and related when referring to Plaintiff RESHMA KAMATH.

119.   In 2023, DEFENDANT WILLIAM ALSUP's IT technician made a comment, "Are you ready?" to Plaintiff RESHMA KAMATH when referring to a VGI cable after the trial had ended that day.

120.   Plaintiff RESHMA KAMATH has to deal with all these MICRO-AGGRESSIONS and even

AMENDED-COMPLAINT

with this WIN a JURY TRIAL in the best interests of her clients.

121. Now, DEFENDANT WILLIAM ALSUP is considering JAIL-TIME, and placing Plaintiff RESHMA KAMATH on a no-fly zone based on his racial misogynistic abuse.

122. It is undisputed that DEFENDANT WILLIAM ALSUP did not grow up with Indians in his STATE OF MISSISSIPPI upbringing in Jim Crow segregationist laws.

123. It is undisputed that DEFENDANT WILLIAM ALSUP barely has had any interaction with Indians in his entire lifetime of seventy-two years.

124. DEFENDANT WILLIAM ALSUP is typical of white male homogeneity, that have one and/or two people of an ethnic background/race hired in a subservient role, and/or in a limited non-friendly role, then claim they're not racist, and/or discriminatory because of that limited to minimal interaction.

125. This is no different that Jim Crow segregationist America where women of color were often in subservient roles.

126. DEFENDANT ALSUP is demonstrating that pitchfork mentality that WHITE people have demonstrated to NON-WHITE people for centuries and decades – even as recent as the fiasco of all WHITE MEN abusing ANITA HILL in a congressional hearing.

127. DEFENDANT ALSUP may have touted his own horn in his book, "Won Over." It is unclear how much of the stories in the book are true, and how much of it is fictitious. It could have been a ploy to get into Harvard, and/or become a judge.

128. Just because DEFENDANT WILLIAM ALSUP knew how to robotically place answers on a scantron does not mean he knows how to deal with issues in the year 2023, with immigrant women from India, how to read members of the Asian/Asian-American community, women of color from Asian and Indian backgrounds, what Indian women have to undergo both within their Indian communities, and outside with White/non-White America.

129. Just because DEFENDANT WILLIAM ALSUP helped an African-American male member

AMENDED-COMPLAINT

RESHMA Kamath

does not mean he knows how to extend that to women of color from different racial and ethnic backgrounds.

130. Moreover, the two Indians that DEFENDANT WILLIAM ALSUP may boast of [Bhavna Sharma/Vince Chhabria] are both from North-Indian communities in India – from West Eurasian backgrounds. Often such cultures support white/light-skinned notions such as fairness ads and bleaches.

131. Plaintiff RESHMA KAMATH is South Indian.

132. DEFENDANT WILLIAM ALSUP is now contemplating jail time for Plaintiff KAMATH, and placing her on a no-fly zone. DEFENDANT WILLIAM ALSUP is not doing this to DEFENDANT JAMES LI while he is flying overseas for his personal reasons.

133. Moreover, DEFENDANT WILLIAM ALSUP is contemplating increasing the sanctions of DEFENDANT HIXSON that went from a "potential $100" to over "$5,000" to over hundreds of thousands of dollars. All this based on DEFENDANT JAMES LI's insistence.

134. DEFENDANT WILLIAM ALSUP may have granted many a motions/requests of women of color/immigrants – however, all in the purview of white and/or male attorneys and law firms. For example, DEFENDANT WILLIAM ALSUP may tout his own horn that he granted some summary judgment motion of an African-American female lawyer. The question becomes did he award her any money, and/or did he do this when she was a sole proprietor. No.

135. DEFENDANT WILLIAM ALSUP has not granted attorneys' fees to any immigrant woman of color sole proprietor who had won the jury trial, and a motion for attorneys' fees was timely made. This shows racial and misogynistic abuse that judicial immunity does not protect.

136. That kind of crippling of monetary wealth, and making wealth-based, monetary decisions only on the basis of skin color, racial/ethnic background, heritage, immigrant status, and related are not protected under judicial immunity and constitutional protections of the Eleventh Amendment.

AMENDED-COMPLAINT

RESHMA KAMATH

137.   Judges should not be allowed to do whatever they want as judges to continue their on-going abuses to lone women. For example, ANITA HILL, a lone African-American woman was abused by a group of men, including our now President Joe Biden. This is now on-going to newer minorities in the United States of America for Indians.

138.   DEFENDANT WILLIAM ALSUP blindly awarded his entire attorneys' fees in further promotion of racial and misogynistic abuse.

139.   DEFENDANT WILLIAM ALSUP is using LAW AS A PRE-TEXT for RACIAL AND MISOGYNISTIC ABUSE continuing the same INVIDUOUS and SYSTEMIC RACISM AND DISCRIMINATION that he sought to allegedly prevent in his youthful years.

140.   DEFENDANT WILLIAM ALSUP has become the perpetrator that he purportedly stood up against in his Mississippi years.

141.   That Southern racism has creeped up and never left DEFENDANT WILLIAM ALSUP, who is not only a white male privileged individual whom no one bothers and everyone treats with utmost respect and concern, but he also comes from allegedly a household where his parents where non-divorced, he did not undergo any racial, physical, sexual abuse, and/or violence in any context of his life.

142.   DEFENDANT ALSUP is part of that white, male homogenous culture that individuals and lawyers such as PLAINTIFF RESHMA KAMATH are forced to appear before, and deal with each day to advocate for their clients.

143.   DEFENDANT ALSUP in his ivory pedagogy does not know from his bench the realities of people, and life in the year 2023.

144.   DEFENDANT ALSUP was gracious in his conduct at trial because generally the jury of women was there.

145.   DEFENDANT ALSUP may claim he has helped some Malaysian woman on a flight, and/or DACA minors. DEFENDANT WILLIAM ALSUP first of all does not know Asian people

AMENDED-COMPLAINT

much – he has barely interacted with Asians, does not know Asian culture, differences amongst and between them, cannot read them in the courtroom.

146. Whereas for DACA, DEFENDANT WILLIAM ALSUP is just promoting more illegal immigrants who're leaching off of hard-working Americans' tax-payer dollars and getting paid in cash.

147. DEFENDANT WILLIAM ALSUP has Hindu phobia, and festers anti-Indian sentiments. This was harbored towards PLAINTFF RESHMA KAMATH in DEFENDANT WILLIAM ALSUP's speech, conduct, and decisions.

148. How is it possible an eight-person diverse jury rules in one way, and DEFENDANT WILLIAM ALSUP sitting on his throne-like bench has a completely different read on the situation.

149. DEFENDANT WILLIAM ALSUP even falsified what was on the court docket at the end of trial saying there was a "motion for sanctions" when he white, female clerk, and a white, female lawyer from the opposing side stood before him.

150. Even when several of the above incidents did not occur in the presence of the jury and have no basis on the substantive decision of the trial – except when PLAINTIFF RESHMA KAMATH was felt up [ it was away from the jury, there was a wall behind plaintiff that a video can prove with the CAMERA PROJECT ], DEFENDANT WILLIAM ALSUP is responsible for any and all of the actions, conduct and omissions that occur in his courtroom.

**DEFENDANT ROSE MAHER**

151. DEFENDANT ROSE MAHER is the clerk for DEFENDANT THOMAS HIXSON.

152. DEFENDANT MAHER is allegedly a White/Caucasian woman.

153. DEFENDANT MAHER made a major error as a clerk, and did not admit and own up to her mistakes.

154. DEFENDANT MAHER issued an erroneous order stating the mandatory settlement conference would be via ZOOM – when the magistrate judge had specifically stated it would

AMENDED-COMPLAINT

RESHMA KAMATH

be IN-PERSON.

155. DEFENDANT MAHER then followed up with an E-MAIL to RESHMA KAMATH stating the mandatory settlement conference would be via ZOOM – when the magistrate judge had specifically stated it would be IN-PERSON.

156. DEFENDANT MAHER then re-issued an order only on the court docket that mandatory settlement conference would be in person. However, DEFENDANT MAHER did not follow up via E-MAIL to RESHMA KAMATH stating the mandatory settlement conference would be IN-PERSON.

157. Six days prior to the mandatory settlement conference, on April 18, 2023, RESHMA KAMATH timely submitted the mandatory settlement conference statement for defense.

158. DEFENDANT MAHER had personal knowledge that RESHMA KAMATH had relied on DEFENDANT MAHER's erroneous ZOOM instructions, because ZOOM credentials for each defendant and their counsel were on the statement.

159. Instead of timely notifying all counsel about DEFENDANT MAHER's reckless mistake and negligence, DEFENDANT MAHER ignored this.

160. **DEFENDANT MAHER's <u>omissions caused a series of reckless orders and judgments from the COURT in MISLEADING</u> the COURT.**

161. **DEFENDANT MAHER's omissions <u>are not protected</u> under ABSOLUTE IMMUNITY and are *ULTRA VIRES*, because DEFENDANT MAHER CONSCIOUSLY WITHHELD INFORMATION from the COURT DEFAMING PLAINTIFF RESHMA KAMATH.**

162. **This type of EMMET TILL and KYLE RITTENHOUSE syndrome of WHITE PEOPLE will not be tolerated anymore – atleast PLAINTIFF RESHMA KAMATH will not tolerate this open and invidious racism in the courts.**

163. **PLAINTIFF RESHMA KAMATH – will not wait until she is a corpse and dead – for JUSTICE TO BE SERVED.**

AMENDED-COMPLAINT

23

**DEFENDANT THOMAS HIXSON**

164.   DEFENDANT THOMAS HIXSON is a White/Caucasian male.

165.   DEFENDANT HIXSON is a magistrate judicial officer in the NORTHERN DISTRICT OF CALIFORNIA.

166.   DEFENDANT HIXSON ogled at RESHMA KAMATH's chest during the mandatory settlement conference.

167.   DEFENDANT HIXSON did not fix his clerk DEFENDANT MAHER's mistakes *re* the ZOOM issue.

168.   DEFENDANT HIXSON did NOT NOTIFY COUNSEL, such as PLAINTIFF RESHMA KAMATH via E-MAIL as they had done prior.

169.   A one-sentence order about "COURTROOM E" was issued on the docket.

170.   DEFENDANT HIXONS's ONE-SENTENCE ORDER reached PLAINTIFF RESHMA KAMATH via ECF/PACER past MIDNIGHT 12:01 A.M. PACIFIC TIME the DAY OF THE MANDATORY SETTLEMENT CONFERENCE.

171.   Since PLAINTIFF RESHMA KAMATH resided in ARIZONA, PLAINTIFF was not about to drive TWELVE HOURS in her car, and/or spend over $2,000 for an airline flight.

**172.**   DEFENDANT HIXSON's **COURT WEB-PAGE states MANDATORY SETTLEMENT CONFERENCES WILL ONLY BE VIA ZOOM.**

173.   DEFENDANTS ALSUP AND HIXSON are both **busy PROTECTING WHITE, FEMALE WOMEN in EACH OF THEIR COURTROOMS**.

174.   DEFENDANTS ALSUP AND HIXSON are **undisputedly RACIST to INDIAN and INDIAN-AMERICAN WOMEN**, such as PLAINTIFF RESHMA KAMATH.

**175.**   DEFENDANTS ALSUP AND HIXSON are highly **MISOGYNISTIC in PROTECTING WHITE WOMEN in EACH OF THEIR COURTROOMS**, as well as **MEN OF ALL RACIAL AND ETHNIC BACKGROUNDS when pitted against an IMMIGRANT,**

AMENDED-COMPLAINT

**NON-WHITE COUNSEL.**

176. **DEFENDANTS ALSUP AND HIXSON** are highly **MISOGYNISTIC, because they ONLY PROTECT NON-WHITE WOMEN when those NON-WHITE WOMEN APPEAR ALONGSIDE A WHITE ATTORNEY, AND/OR A MALE ATTORNEY.**

177. DEFENDANT ALSUP may have entire biographies, autobiographies, and court orders protecting non-White women, such as "ordering a Malaysian woman not part of a no-fly zone," "ruling in favor of Latham & Watkins, non-White African-American attorney in a MSJ," as his biography recounting from a White woman states from a White woman's perspective, "the INDIAN COMMISSIONS" Defendant Alsup protected (The White woman and Defendant Alsup FAILED to state "NATIVE-AMERICAN" in that entire biography of Defendant Alsup."

178. The common thread there is this: **ALL HAD WHITE MALES/WHITE FEMALES as ATTORNEYS APPEAR WITH THEM before DEFENDANT ALSUP**.

179. DEFENDANT HIXSON SHOULD BE ASKED THE SAME QUESTIONS THAT DEFENDANT ALSUP WOULD BE.

*DEFENDANT THOMAS HIXSON*

1. In 2022, DEFENDANT THOMAS HIXSON made a grave error via his white female clerk, ROSE MAHER. While he had informed parties telephonically that the mandatory settlement conference in 2023 would be held in-person, his white female clerk repeatedly on the court-docket and via electronic-mail notified counsel, including Plaintiff RESHMA KAMATH that the mandatory settlement conference in 2023 would be held remotely.

2. In 2023, DEFENDANT THOMAS HIXSON on his webpage stated that mandatory settlement conference would all be held remotely. Nothing about that announcement on the webpage of DEFENDANT HIXSON had changed.

3. In 2023, DEFENDANT THOMAS HIXSON never apologized for his white, female clerk's

AMENDED-COMPLAINT



grave error both on the court docket, and via e-mail.

4.  When Plaintiff RESHMA KAMATH contacted the white female clerk, ROSE MAHER about sending the ZOOM appearance link, there was no response.

5.  Apparently, only a court-docket filing was made half a day prior about the mandatory settlement conference to be held in Courtroom E.

6.  Because of Plaintiff RESHMA KAMATH's setting on the ECF.CAND profile, that only court-docket filing was received the next day at 12:01 p.m. PT, i.e., the same day of the mandatory settlement conference.

7.  In 2023, during a settlement conference, DEFENDANT THOMAS HIXSON ogled at the breasts of RESHMA KAMATH.

8.  In 2023, during a settlement conference, DEFENDANT THOMAS HIXSON had a bruised ego when RESHMA KAMATH continued to speak to her client, about the state case that ran concurrently with the federal case.

9.  DEFENDANT THOMAS HIXSON had insinuated comments of "slut" to PLAINTIFF RESHMA KAMATH.

10. DEFENDANT THOMAS HIXSON was hell bent on settling the case, and forcing to settle the case even when he didn't want to.

11. The bro-code of THOMAS HIXSON/JAMES LI was clearly visible.

12. DEFENDANT THOMAS HIXSON even made comments that PLAINTIFF RESHMA KAMATH was "sleeping" with and were lovers with her client. This includes communications with JUDGE ALSUP.

13. DEFENDANT THOMAS HIXSON along with DEFENDANT WILLIAM ALSUP, and his courtroom clerk, ANGIE, laughingly made comments that PLAINTIFF RESHMA KAMATH should become a political representative rather than practicing law. DEFENDANT ALSUP also told her to "study" even when PLAINTIFF RESHMA KAMATH's forty-eight [48] page

AMENDED-COMPLAINT

MOTION caused DEFENDANT ALSUP to award over a million dollars in attorneys' fees to DEFENDANT DYLAN WISEMAN for his two-page [2-page] motion.

14. PLAINTIFF RESHMA KAMATH has no intentions to pursue any kind of political office anywhere. PLAINTIFF RESHMA KAMATH is only an attorney.

**15. DEFENDANT HIXSON CAN BE SUED FOR MISMANAGEMENT OF HIS COURTROOM, COURT WEBPAGE, AND HIS CLERK'S WRONG INFORMATION, INTER ALIA.**

**DEFENDANT JAMES LI AND LILAW INC.:**

16. DEFENDANT JAMES LI is an attorney in San Jose, California, and JAMES LI LOST THE JURY TRIAL.

17. DEFENDANT JAMES is the owner of LILAW, INC., where DANIEL PETERSON and TAMARA RIDER, who had tampered with the evidence box in conjunction with DEFENDANT MEULMAN after PLAINTIFF RESHMA KAMATH had inspected and signed the evidence paper.

18. DEFENDANT JAMES had personal knowledge that DANIEL PETERSON and TAMARA RIDER tampered with the evidence box in conjunction with DEFENDANT MEULMAN.

19. DEFENDANT JAMES FALSIFIED having COVID.

20. DEFENDANT JAMES and DEFENDANT LILAW, INC. then made a series of misleading statements on the Court docket on DEFENDANT NORTHERN DISTRICT OF CALIFORNIA, and DEFENDANT NINTH CIRCUIT COURT OF APPEALS.

21. DEFENDANT JAMES and DEFENDANT LILAW, INC. had personal knowledge even at the stage of appeal that PLAINTIFF RESHMA KAMATH's name did not appear on the docket for DEFENDANT NINTH CIRCUIT COURT OF APPEALS.

22. DEFENDANT JAMES and DEFENDANT LILAW, INC. had personal knowledge that at the MEDIATION CONFERENCE, there was NO ATTORNEY from APPELLEE.

AMENDED-COMPLAINT

23.   Yet DEFENDANT JAMES and DEFENDANT LILAW, INC. – as the losing appealing attorney, FAILED to rectify their mistakes.

24.   DEFENDANT NINTH CIRCUIT COURT OF APPEALS also FAILED to rectify their mistake.

25.   DEFENDANT JAMES and DEFENDANT LILAW, INC. was often taking long vacations outside the UNITED STATES for which he REQUIRED CONTINUANCES – and JUDGE ALSUP BLINDLY GRANTED SUCH CONTINUANCES. But when PLAINTIFF RESHMA KAMATH wanted a similar continuance – JUDGE ALSUP DISPLAYING his RACIAL HATRED would then prepone hearings and rule in favor of DEFENDANT JAMES who was vacationing.

26.   The INCOMPETENCE OF THE CLERKS, DEFENDANT MEULMAN, MAHER, DEFENDANT NINTH CIRCUIT COURT OF APPEALS, as well as DEFENDANTS JAMES and LILAW, INC. attorneys is EVIDENCED CLEARLY ON THE COURT DOCKET.

27.   The RACISM and RACIAL MISOGYNY of DEFENDANTS ALSUP and HIXSON is EVIDENCED CLEARLY ON THE COURT DOCKET.

28.   This is because the INDIAN-AMERICAN WOMAN COUNSEL, RESHMA KAMATH, was appearing without any MALE ATTORNEY.

29.   DEFENDANTS ALSUP, HIXSON, MAHER AND MEULMAN took the liberty to be RACIALLY and MISOGYNISTICALLY MOTIVATED in their dealing with PLAINTIFF RESHMA KAMATH.

30.   DEFENDANTS LILAW, INC.'s attorneys then orchestrated some more DEFAMATORY and DEROGATORY E-MAILS ABOUT PLAINTIFF RESHMA KAMATH to the NINTH CIRCUIT OF APPEALS' question and answer forum.

31.   There DEFENDANTS LILAW, INC.'s attorneys then re-produced to DEFENDANT ALSUP comments from some unknown clerk – who are hiding their INCOMPETENCE at the

AMENDED-COMPLAINT

DEFENDANT NINTH CIRCUIT COURT OF APPEALS. DEFENDANT ALSUP who has a specific vendetta towards INDIAN-AMERICAN FEMALE IMMIGRANT COUNSEL such as PLAINTIFF RESHMA KAMATH, once again started that defamatory conduct adding more such as DEFENDANT ALSUP'S "SNAFU" COMMENT in WRITING on the court docket.

32. PLAINTIFF RESHMA KAMATH has NOT interacted with any of LILAW INC's witnesses in person ever outside of the court-room questioning – not in the lobby, not in the elevator, not in the women's bathroom, and not even in the entire courthouse.

**DEFENDANT DYLAN WISE MAN AND BUCHALTER APC**

33. DEFENDANT DYLAN WISEMAN is an attorney in CALIFORNIA.

34. DEFENDANT WISEMAN made some DEROGATORY STATEMENTS via E-MAIL to PLAINTIFF RESHMA KAMATH.

35. Then, DEFENDANT WISEMAN BLOCKED PLAINTIFF RESHMA KAMATH.

36. DEFENDANT WISEMAN'S CONDUCT AND OMMISSIONS WERE RACIALLY-MOTIVATED AGAINST INDIAN AND INDIAN-AMERICAN WOMEN, SUCH AS PLAINTIFF RESHMA KAMATH – because the INDIAN-AMERICAN WOMAN COUNSEL was appearing without any MALE ATTORNEY.

37. DEFENDANT WISEMAN thereafter LEACHED OFF OF PLAINTIFF RESHMA KAMATH'S ATTORNEYS' FEES MOTION.

38. CLIENTS had TERMINATED DEFENDANT WISEMAN in November 2021.

39. DEFENDANT BUCHALTER APC is a law firm, where DEFENDANT WISEMAN is hired as an attorney. CLIENTS had TERMINATED DEFENDANT BUCHALTER APC in November 2021.

40. DEFENDANT BUCHALTER AND DEFENDANT WISEMAN CONTINUE TO SUE THE CLIENTS IN ARBITRATION COURT -EVEN AFTER THEY WERE AWARDED OVER $2 MILLION OF PARTIALLY FREE MONEY WITHOUT A MOTION PURSUANT TO

AMENDED-COMPLAINT

RESHMA KAMATH

CODE.

41. DEFENDANT NORTHERN DISTRICT OF CALIFORNIA, and DEFENDANT NINTH CIRCUIT OF APPEALS have FALSIFIED the dockets in DEFAMING RESHMA KAMATH that the incompetence of EACH OF THEIR CLERKS has caused.

42. DEFENDANT NORTHERN DISTRICT OF CALIFORNIA, and DEFENDANT NINTH CIRCUIT OF APPEALS have RECKLESSLY DISREGARDED to check who the APPELLE ATTORNEY was, and if an attorney had not signed up for the ECF because she was the appellate work was not part of her scope, DEFENDANT NORTHERN DISTRICT OF CALIFORNIA, and DEFENDANT NINTH CIRCUIT OF APPEALS should NOT include a TERMINATED WHITE, MALE ATTORNEY, Brandon Carr from TWO YEARS AGO.

43. RESHMA KAMATH DOES NOT WANT ANYONE TO GET FREE CREDIT FOR HER WORK. THIS REMAINS ON THE DOCKET FOR POSTERITY. IF IT WERE AN UNDERPRIVILEGED MINORITY, THEN RESHMA KAMATH MAY HAVE LET THIS GO. BUT PLAINTIFF RESHMA KAMATH WILL NOT LET THIS GO, BECAUSE THE CAND JUDGES WERE INFORMED OF THIS AND SAT IN **OMMISSION.**

44. Since Courts are such sticklers about perfection and exactions, such MISTAKES, ERRORS and OMMMISIONS are RACIST in nature as well not allowing NON-WHITE, FEMALE, IMMIGRANT COUNSEL ZEALOUSLY ADVOCATE for her clients.

45. DEFENDANT NORTHERN DISTRICT OF CALIFORNIA, and DEFENDANT NINTH CIRCUIT OF APPEALS hire INCOMPETENT CLERKS, UNEDUCATED IN THE LAW, WITH LACK OF TRAINING who like to BLAME other NON-WHITE WOMEN - PARTICULAY MEXICAN/MEXICAN-AMERICAN WOMEN who have DISPLAYED HATRED TOWARDS INDIAN/INDIAN-AMERICAN WOMEN, such as RESHMA KAMATH; and such MEXICAN/MEXICAN-AMERICAN WOMEN display an OUTWARD FAVORITISM towards WHITE, MALE and MALES in general. The MACHISSMO culture

AMENDED-COMPLAINT



of MEXICAN/MEXICAN-AMERICAN WOMEN is clearly witnessed in how they like to blame non-white women from other ethnic backgrounds.

**DEFENDANT YVONNE GONZALEZ-ROGERS**

46.   DEFENDANT GONZALEZ-ROGERS is a Latin-American judge who has displayed favoritism to WHITE OR MALE attorneys.

47.   DEFENDANT GONZALEZ-ROGERS ALSO SHOWS FAVORITISM to Latin-American litigants – CIRCUMVENTING CODE AND LAW.

48.   DEFENDANT GONZALEZ-ROGERS is AMERICAN-BORN.

49.   DEFENDANT GONZALEZ-ROGERS is **not an immigrant** to the United States. DEFENDANT GONALZEZ-ROGERS has cleverly brought in stories of her U.S. navy father, and her grandmother, to rise up the ranks – even as a local woman.

50.   DEFENDANT GONZALEZ-ROGERS is THIRD-GENERATION – which means DEFENDANT GONZALEZ-ROGERS is **highly-privileged such as would be many a WHITE WOMAN.**

51.   DEFENDANT GONZALEZ-ROGERS is married to White, Male individual – which further shows that she gives into the White way of thinking, acting, and behaving.

52.   DEFENDANT GONZALEZ-ROGERS has no empathy and is racially against PLAINTIFF RESHMA KAMATH.

53.   DEFENDANT GONZALEZ-ROGERS DEMONSTRATES BIAS AND PREJUDICE TOWARDS INDIAN/INDIAN-AMERICAN CLIENTS SUCH AS NOT ALLOWING EVEN ONE INDIAN-AMERICAN PLAINTIFF GO TO TRIAL.

54.   DEFENDANT GONZALEZ-ROGERS and her clerk went OUT OF THEIR WAY TO REMIND a WHITE, MALE ATTORNEY, who HAD FAILED TO APPEAR FOR A HEARING (making a phone-call to him and asking him to appear).

55.   DEFENDANT GONZALEZ-ROGERS circumvented code sections and rules based on her

AMENDED-COMPLAINT

racial hatred towards INDIAN/INDIAN-AMERICAN WOMEN, such as PLAINTIFF RESHMA KAMATH.

56.   DEFENDANT GONZALEZ-ROGERS – when PLAINTIFF RESHMA KAMATH informed DEFENDANTS GONZALEZ-ROGERS about a DRAFT VERSION of this COMPLAINT filed on JUDGE ALSUP and HIXSON's case docket, DEFENDANT GONZALEZ-ROGERS followed SUIT of the WHITE, MALE attorneys and referred PLAINTIFF RESHMA KAMATH for professional misconduct to the DEFENDANT COMMITTEE.

57.   DEFENDANT GONZALEZ-ROGERS who is a woman of color – displays that typical hatred of MEXICAN-AMERICAN women towards INDIAN WOMEN such as PLAINTIFF RESHMA KAMATH.

58.   DEFENDANT GONZALEZ-ROGERS often has the support MALE attorneys and judges in general; as well as WHITE women. DEFENDANT GONZALEZ-ROGERS also has overwhelming cases assigned to her of LATIN-AMERICAN LITIGANTS – which DEFENDANT CAND claims is "random assignment." How much of this random and how much is intentional is a discoverable question.

59.   DEFENDANT GONZALEZ-ROGERS also tends to circumvent law, code and precedent when it comes to favoring LATIN-AMERICAN LITIGANTS in DEFENDANT GONZALEZ-ROGERS' court.

60.   DEFENDANT GONZALEZ-ROGERS ALLEGEDLY HAS $9-$14 MILLION IN INDEX FUNDS.

61.   DEFENDANT GONZALEZ-ROGERS ALLEGEDLY married a high-profile TRADER.

62.   DEFENDANT GONZALEZ-ROGERS ALLEGEDLY COULD HAVE ENGAGED IN INSIDER TRADING, I.E., TIPPER-TIPEE TRADING WITH HER SPOUSE.

63.   That is why DEFENDANT GONZALEZ-ROGERS reneged from moving forward with a SECURITIES FRAUD CLAIM, because if DEFENDANT GONZALEZ-ROGERS does, then

AMENDED-COMPLAINT

DEFENDANT GONZALEZ-ROGERS and her spouse would be exposed.

64. DEFENDANT GONZALEZ-ROGERS must be investigated.

65. DEFENDANT GONZALEZ-ROGERS' finances as a judicial officer must be investigated.

66. DEFENDANT GONZALEZ-ROGERS and her spouse must be investigated.

67. PLAINTIFF RESHMA KAMATH comes from a culture and background where WOMEN JUDGE OTHER WOMEN BASED ON INTELLIGENCE, MERIT AND SKILLS.

68. IF PLAINTIFF RESHMA KAMATH COMPARES APPLES TO APPLES, THEN DEFENDANT GONZALEZ-ROGERS IS NOT THAT SMART BECAUSE HER "CUM LAUDE" MAKES HER MEDIOCRE IN COMPARISON TO PLAINTIFF RESHMA KAMATH'S "SUMMA CUM LAUDE." AMONGST MANY THINGS, THIS COULD BE ONE FACTOR WHY A JUDGE WOULD HOLD AN ATTORNEY DOWN, BECAUSE THAT ATTORNEY IS BETTER THAN THEM AND WILL ACHIEVE MUCH MORE SUCCESS IN LIFE. (ISN'T THAT WHAT PEOPLE DID TO NELSON MANDELA IMPRISONING HIM FOR FOURTEEN YEARS WHILE THE WORLD WATCHED AND THEN ALL OF A SUDDEN IT WAS POLITICALLY CORRECT TO CALL HIM A MARTYR). VERY SIMILAR PHENOMENON AMONGST DEFENDANT JUDGES.

**DEFENDANT COMMITTEE**

69. DEFENDANT COMMITTEE, that JAMES SCHURZ and DARALYN DURIE, more WHITE ATTORNEYS, from MORRISON & FOERESTER, are particularly FAVORABLE to DEFENDANT GONZALEZ-ROGERS.

70. DEFENDANT COMMITTEE such as typical WHITE ATTORNEYS now want to be extremely nice and favorable to African-American and Mexican-American people to the detriment of newer ethnic minorities and women, such as Indian-American and Middle-Eastern people, particularly women from such ethnic minority groups.

**DEFENDANT JEFFREY WHITE**

AMENDED-COMPLAINT



71. DEFENDANT JEFFREY WHITE is another RACIST JUDGE of the DEFENDANT NORTHERN DISTRICT OF CALIFORNIA. DEFENDANT WHITE is also WHITE, MALE.

72. DEFENDANT WHITE has also displayed MISOGYNISTIC racist tendencies against an AFRICAN-AMERICAN IMMIGRANT, as well as his NON-WHITE COUNSEL, RESHMA KAMATH.

73. DEFENDANT WHITE was faced with a situation where WHITE, FEMALE ATTORNEYS, FAILED to appear in a case. Thereafter, PLAINTIFF RESHMA KAMATH made an application for DEFAULT against that DEFENDANT represented by those WHITE, FEMALE ATTORNEYS. Instead of JUDGE WHITE's Mexican-American clerk entering DEFAULT, they waited for over a week and sent reminders to the WHITE, FEMALE ATTORNEYS to file OPPOSITIONS. In three other cases, when PLAINTIFF RESHMA KAMATH made such an application, the Clerk of those Judges immediately entered default within a day.

74. DEFENDANT WHITE's staff and him are racially biased towards WHITE, FEMALE ATTORNEYS. White Female attorneys are usually seen as the crème da la crème for the JUDICIARY – where WHITE, and non-WHITE men go out of their way to protect White American women – even more so when they're younger.

75. DEFENDANT WHITE sees non-WHITE female immigrant attorneys such as cooks, and to be pregnant with little children that he can be nice to.

76. DEFENDANT WHITE HAS CASE LAW AFTER CASE LAW WHERE HE HAS DISMISSED OR STRUCK DOWN HINDU/MUSLIM-AMERICANS' CASES.

**DEFENDANT CHARLES BREYER AS POPULARLY KNOWN ON ONLINE PORTALS, AS "RACIST BREYER"**

77. AS PREDICTED, RACIST BREYER HAS REPEATEDLY RULED AGAINST INDIANS/INDIAN-AMERICANS – IN HIS MOST RECENT HEADSPIN CASE WHERE

AMENDED-COMPLAINT



HE TOOK AN INNOCENT HARD-WORKING INDIAN ENTREPRENUER, USED **WHITE-AMERICAN ENGLISH/WHITE-AMERICAN RACIST TACTICS** AGAINST THE CEO (BOTH HIS AND THE OPPOSING ATTORNEYS) AND BROUGHT HIM TO NOTHINGNESS.

78. THIS CAME WEEKS AFTER PLAINTIFF RESHMA KAMATH STATED ON THE DOCKET THAT RACIST BREYER WAS RACIST TO INDIAN-AMERICANS.

79. RACIST BREYER HAS FOR THE SAME OFFENSE OF WHITE/CAUCASIANS EITHER DISMISSED THE CASE (WHERE IT COULD NOT EVEN BE APPEALED) OR JUST DISMISSED THE CASES.

80. RACIST BREYER, SIMILAR TO OTHER DEFENDANT-JUDGES, DOES NOT UNDERSTAND THAT WHITE PEOPLE HAVE A CULTURE AND WHITE AMERICAN ENGLISH. MOST OF THE TIMES WHITE PEOPLE ARE WRONG WHEN IT COMES TO ADJUDICATING PEOPLE FROM OTHER BACKGROUNDS, CULTURES AND RACES – EVEN WHEN THEY'RE ALL SPEAKING ENGLISH.

81. RACIST BREYER HAS DEMONSTRATED THIS IN HIS COURTROOM.

82. AS MOST WHITE-AMERICANS, RACIST BREYER ALSO GIVES INTO EAST-ASIAN ATTORNEYS AND LITIGANTS.

83. THAT LENIENCY AND POSITIVE ATTITUDE IS NOT AFFORDED TO INDIANS/INDIAND-AMERICANS IN RACIST BREYER'S COURTROOM – AS IS THE OTHER DEFENDANT JUDGES'.

**ANY AND ALL DEFENDANTS**

84. ANY AND ALL THESE DEFENDANTS including the DEFENDANT CAND, NINTH CIRCUIT, as well as the COMMITTEE, have commented on how PLAINTIFF RESHMA KAMATH's English is. Particularly her English listening skills.

85. PLAINTIFF RESHMA KAMATH who has won awards for her writing collegiate and

AMENDED-COMPLAINT

graduate school, was in advanced placement courts in high school with As and A+s, and was an English teacher as well.

86.   ANY AND ALL THESE DEFENDANTS think that just because they hired some NON-WHITE clerks – they're somewhat not racist.

87.   ANY AND ALL THESE DEFENDANTS think that just because they hired some FEMALE clerks – they're somewhat not misogynistic.

88.   This is what had occurred for years during the history of the worlds, where WHITE PEOPLE were in power, and had subordinate, subservient, NON-WHITE MEN and WOMEN working under them.

89.   A statistical analysis needs to be conducted where there must be a count of how many SOLE PROPRETIOR, NON-WHITE FEMALE IMMIGRANT COUNSEL have appeared and WON before these JUDGES. And how many of how many SOLE PROPRETIOR, NON-WHITE FEMALE IMMIGRANT COUNSEL were derogated in each of these defendants' courtrooms.

90.   DEFENDANTS NORTHERN DISTRICT OF CALIFORNIA STANDING COMMITTEE ON PROFESSIONAL RESPONSIBILITY presented TWO MORE WHITE ATTORNEYS and have yet to conduct their interview, because the WHITE, WOMAN attorney was on a vacation to JAPAN.

91.   PLAINTIFF RESHMA KAMATH timely and immediately e-mailed the attorneys her schedule not once but twice, but the WHITE, MALE attorney was non-responsive until after that scheduled interview.

92.   Then, PLAINTIFF RESHMA KAMATH received an away message that the WHITE, FEMALE attorney was in JAPAN. Then, they were available and wanted to interview PLAINTIFF on a date and time when PLAINTIFF has prior commitments.

93.   The first E-MAIL from DEFENDANT COMMITTEE came a DAY PRIOR to THANKSGIVING, and now DEFENDANT COMMITTEE wants to interview PLAINTIFF a

AMENDED-COMPLAINT

day prior to the CHRISTMAS weekend. This is harassment.

94.  This is how DEFENDANT LILAW, INC's WHITE, FEMALE attorney was vacationing after MS. RIDER LOST the trial (and, after she had tampered with the evidence box); and when DEFENDANT JAMES was vacationing outside the UNITED STATES after DEFENDANTs ALSUP/MEULMAN made all kinds of accommodations for DEFENDANT JAMES to appear per his schedule.

95.  When PLAINTIFF RESHMA KAMATH had a prior commitment, DEFENDANT ALSUP, and now potentially, DEFENDANTS COMMITTEE will NEGATE all their SHORTCOMINGS, but get ANGRY that a NON-WHITE, FEMALE IMMIGRANT COUNSEL has a schedule to adhere to similar to the WHITE attorneys and MALE attorneys.

96.  The prior-uploaded exhibits A, B, C, AND D are incorporated via reference herein.

97.  PLAINTIFF RESHMA KAMATH had not made any references to INDIA, her ethnic, and/or racial background in any part of the case prior to and during trial.

98.  Even after trial, where RESHMA KAMATH won her case, RESHMA KAMATH did not make references until a draft version of this Complaint was filed on and around September 24, 2023. The draft version was months after DEFENDANT ALSUP had made derogatory references during the case.

99.  PLAINTIFF RESHMA KAMATH is an extremely nice and kind person. Because of her genuine nature, persons such as DEFENDANTS often take advantage of PLAINTIFF.

100. PLAINTIFF RESHMA KAMATH sees the factual allegation based on her personal knowledge as a personal attack on her based on racial and gender hatred of natural person Defendants; and the open and invidious discrimination of the corporate/non-natural person Defendants.

101. Even if PLAINTIFF RESHMA KAMATH decides not to practice law in California and the United States of America, this Complaint is not moot.

102. Even if PLAINTIFF RESHMA KAMATH is suspended and/or disbarred because of the

AMENDED-COMPLAINT

RESHMA KAMATH

DEFENDANTS' racism and misogyny, PLAINTIFF RESHMA KAMATH will continue to litigate this case.

103. Even if this court and anyone thinks all the acts, omissions, occurrences, and incidents occurred within a court of law, such acts and omissions complained thereof, are *ULTRA VIRES*, without any ABSOLUTE IMMUNITY, because there can be NO ABSOLUTE IMMUNITY for JUDGES and CLERKS for RACIAL AND GENDER SLURS.

104. Each and every act and omission, complained thereof, have real-world implications; and do not occur in a vacuum.

105. Thus, PLAINTIFF RESHMA KAMATH will litigate this case on-going both as personal racial and gender attacks, defamation, as well as institutional open and invidious racism and misogyny.

106. PLAINTIFF presently remains unaware of the true names or capacities of Defendants named herein as DOES 1-10, inclusive, and PLAINTIFF will seek leave of Court to allege their true names and capacities after the same have been ascertained.

107. DEFENDANTS DOES 1-10, inclusive, are sued under fictitious names. PLAINTIFF is informed and believes, and on that basis alleges, that each of the defendants sued under fictitious names is in some manner responsible for the wrongs and damages alleged below, in so acting was functioning as the agent, servant, partner, and employee of the co-defendants, and in taking the actions mentioned below was acting within the course and scope of his or her authority as such agent, servant, partner, and employee, with the permission and consent of the co-defendants. The named defendants and DOE defendants are sometimes hereafter referred to, collectively and/or individually, as "defendants."

108. PLAINTIFF remains informed and believes and thereon alleges that each of the Defendants herein, and are in some manner legally responsible for the acts and omissions alleged herein and actually and legally caused and contributed to various injuries and damages alleged herein

AMENDED-COMPLAINT

109.   PLAINTIFF remains informed and believes and thereon alleges that at all times herein mentioned, each of the Defendants was the agent, servant, partner, joint venturer, and/or employee of each of the other Cross-Defendants, and in doing the things hereinafter alleged, were acting within the course and scope of said agency and/or employment, and with the permission.

110.   ANY AND ALL DEFENDANTS were responsible for the events and damages alleged herein, including on the following bases: (a) defendants committed the acts alleged; (b) at all relevant times, one or more of the defendants was the agent or employee, and/or acted under the control or supervision, of one or more of the remaining cross-defendants and, in committing the acts alleged, acted within the course and scope of such agency and employment and/or is or are otherwise liable for Plaintiff's damages; (c) at all relevant times, there existed a unity of ownership and interest between or among two or more of the defendants such that any individuality and separateness between or among those defendants has ceased, and defendants are the alter egos of one another.

111.   Defendants exercised domination and control over one another to such an extent that any individuality or separateness of defendants does not, and at all times herein mentioned did not, exist. Adherence to the fiction of the separate existence of defendants would permit abuse of the corporate privilege and would sanction fraud and promote injustice.

112.   All actions of all defendants were taken by employees, supervisors, executives, officers, and directors during employment with all defendants, were taken on behalf of all defendants, and were engaged in, authorized, ratified, and approved of by all other defendants.

113.   Finally, at all relevant times mentioned herein, all defendants acted as agents of all other defendants in committing the acts alleged herein.

**JURISDICTION & VENUE**

114.   This Court has jurisdiction over this action because the matter in controversy exceeds Seventy-

AMENDED-COMPLAINT



Five Thousand Dollars ($75,000.00), exclusive of costs and interest, and that the causes of action in 42 U.S.C section 1983 provide federal subject-matter jurisdiction.

115. Jurisdiction over Defendants is proper.

116. Venue is proper in this Judicial District, because the events giving rise to the claims and made herein occurred in this Judicial District. The predicate acts complained of herein did occur within the territorial boundaries of this court, and the corpus of the complaint centers on state law questions. Thus, jurisdiction is proper in this court.

## CLAIMS FOR RELIEF

## I.      INJUNCTIVE RELIEF;

## [AGAINST DEFENDANTS]

117. PLAINTIFF RESHMA KAMATH hereby pleads, complains, alleges and incorporates via reference each and every allegation stated in the preceding paragraphs as if set forth fully herein.

118. Right around Christmas time this year, and/or prior to the end of the year, DEFENDANTS ALSUP and HIXSON are contemplating an ARREST WARRANT against PLAINTIFF RESHMA KAMATH based on DEFENDANTS ALSUP and HIXSON's racial and gender animus.

119. Such an act of DEFENDANTS ALSUP and HIXSON based on DEFENDANTS ALSUP and HIXSON's racial and gender animus would be HIGHLY PREJUDICIAL to PLAINTIFF RESHMA KAMATH.

120. DEFENDANT WILLIAM ALSUP is contemplating JAIL time and increasing the frivolous sanctions based on DEFENDANT THOMAS HIXSON's racial and misogynistic abuse. That sanction went from a "potential $100" to over "$5,000" based on DEFENDANT LI's perjury, and now is at the point of hundreds of thousands of dollars with DEFENDANT ALSUP contemplating a search and seizure warrant with immediate JAIL TIME.

AMENDED-COMPLAINT

121.   DEFENDANTS' racial and gender animus is targeted towards Asian women such as PLAINTIFF RESHMA KAMATH.

122.   This is particularly because DEFENDANTS do not like smart non-White women (without a male attorney alongside them) such as PLAITNIFF RESHMA KAMATH standing upto the DEFENDANTS.

123.   This is not just part of a case in California. DEFENDANT WILLIAM ALSUP is now contemplating jail time for Plaintiff KAMATH, and placing her on a no-fly zone. DEFENDANT WILLIAM ALSUP is contemplating GARNISHING WAGES of an ATTORNEY based on DEFENDANT WILLIAM ALSUP's RACIAL and GENDER ABUSE.

124.   Injunctive relief is afforded, because otherwise there will be <u>IRREPARABLE HARM</u> to PLAINTIFF RESHMA KAMATH, and such increasing sanctions/JAIL TIME/NO-FLY ZONE will be detrimental to imminent and immediate relief.

125.   DEFENDANTS HIXSON AND ALSUP have actually and proximately caused DEFENDANT GONZALEZ-ROGERS to refer PLAINTIFF for professional misconduct. DEFENDANT GONALEZ-ROGERS does what White judicial officers and White people do to be in conformity with them.

126.   There is a likelihood of success on the merits, because each DEFENDANTS are a state actor to whom the 42 U.S.C. section 1983 relief applies as to PLAINTIFF RESHMA KAMATH.

127.   There is a public policy not to have judicial officers abuse their judicial authority and discretion exceeding any and all scope of judicial authority, and shocking the conscience.

128.   Thus, PLAINTIFF RESHMA KAMATH seeks injunctive relief against the actions, and/or omissions of DEFENDANTS and/or damages in the amount of $16.5 million to PLAINTIFF.

## II.   <u>DEFAMATION *PER SE* – SLANDER</u>
### <u>[AGAINST ANY AND ALL DEFENDANTS]</u>

129.   PLAINTIFF RESHMA KAMATH hereby pleads, complains, alleges and incorporates via

AMENDED-COMPLAINT

RESHMA KAMATH

reference each and every allegation stated in the preceding paragraphs as if set forth fully herein.

130.   DEFENDANT WILLIAM ALSUP had made comments about PLAINTIFF RESHMA KAMATH such as "fat" "kid" "jealous" "unprofessional" "young" with no basis, *inter alia.*

131.   DEFENDANT WILLIAM ALSUP is a state actor working in the federal court under ARTICLE III standing. DEFENDANT WILLIAM ALSUP does not have absolute judicial immunity for acts outside ministerial duties as a judicial officer.

132.   This is not just part of a case in California. DEFENDANT WILLIAM ALSUP is now contemplating jail time for Plaintiff KAMATH, and placing her on a no-fly zone. DEFENDANT WILLIAM ALSUP is contemplating GARNISHING WAGES of an ATTORNEY based on DEFENDANT WILLIAM ALSUP's RACIAL and GENDER ABUSE.

133.   DEFENDANT THOMAS HIXSON had insinuated comments of "slut" about PLAINTIFF RESHMA KAMATH.

134.   DEFENDANT THOMAS HIXSON even made comments that PLAINTIFF RESHMA KAMATH was "sleeping" with and were lovers with her client. This includes communications with JUDGE ALSUP.

135.   DEFENDANT THOMAS HIXSON is a state actor working in the federal court under ARTICLE III standing.

136.   DEFENDANT THOMAS HIXSON does not have absolute judicial immunity for acts outside ministerial duties as a judicial officer.

137.   DEFENDANT THOMAS HIXSON along with DEFENDANT WILLIAM ALSUP, and DEFENDANT MUELEMAN laughingly made comments that PLAINTIFF RESHMA KAMATH should become a political representative rather than practicing law.

138.   DEFENDANT ALSUP's "SNAFU," "UNPROFESSIONAL," "OVERSIGHT," and "INDIA" comments are SLURS hurled against PLAINTIFF RESHMA KAMATH. None of them were

AMENDED-COMPLAINT

RESHMA KAMATH

grounded in code and law.

139.   DEFENDANT ALSUP also told her to "study" even when PLAINTIFF RESHMA KAMATH's forty-eight [48] page MOTION caused DEFENDANT ALSUP to award over a million dollars in attorneys' fees to DEFENDANT DYLAN WISEMAN for his two-page [2-page] motion.

140.   After PLAINTIFF RESHMA KAMATH won the case on the merits, DEFENDANT WILLIAM ALSUP and his staff, including his clerk, ANGIE, have made falsified comments that insinuate PLAINTIFF RESHMA KAMATH has used deceit and fraud in the court in the pursuit of the case.

141.   After PLAINTIFF RESHMA KAMATH won the case on the merits, DEFENDANT JAMES LI and his staff have made falsified comments that insinuate PLAINTIFF RESHMA KAMATH has used deceit and fraud in the court in the pursuit of the case.

142.   Each publication and repetition of the defamatory and slanderous comments are a single act of defamation.

143.   DEFENDANT WILLIAM ALSUP, DEFENDANT JAMES LI, and DEFENDANT THOMAS HIXSON must each pay monetary damages to PLAINTIFF RESHMA KAMATH for damages in the amount exceeding seventy-five thousand dollars [ $75,000 ], specifically, $16.50 million dollars.

### III.   RACIAL DISCRIMINATION UNDER 42 U.S.C. SECTION 1983; [AGAINST ANY AND ALL DEFENDANTS]

144.   PLAINTIFF RESHMA KAMATH hereby pleads, complains, alleges and incorporates via reference each and every allegation stated in the preceding paragraphs as if set forth fully herein.

145.   DEFENDANT ALSUP's "SNAFU," "UNPROFESSIONAL," "OVERSIGHT," and "INDIA" comments are SLURS hurled against PLAINTIFF RESHMA KAMATH. None of them were

AMENDED-COMPLAINT

grounded in code and law.

146. Defendant WILLIAM ALSUP made comments about "India" when nothing on the docket, and/or anything on and off the record had any references to "India."

147. The case had no references to "India," and DEFENDANT WILLIAM ALSUP's comment was only intended to be a racial/ethnic/cultural/religious and demeaning comment to PLAINTIFF RESHMA KAMATH.

148. Defendant WILLIAM ALSUP allowed the assault and abuse of PLAINTIFF RESHMA KAMATH in his courtroom during the trial. After PLAINTIFF RESHMA KAMATH had WON her first JURY TRIAL, Defendant WILLIAM ALSUP called PLAINTIFF "unprofessional" *inter alia*, [ based on opposing attorney, DEFENDANT JAMES' defamatory statements ] whereas DEFENDANT ALSUP called a white, female attorney who barely did any work at trial during the final pre-trial conference "a good attorney."

149. PLAINTIFF RESHMA KAMATH did not allow any of the above-stated incidents to affect the substantive merits of her clients' case, because RESHMA KAMATH is a professional who is above and beyond the pettiness of white, male homogeneity in this country.

150. Defendant WILLIAM ALSUP is a state actor working in the federal court under ARTICLE III standing. DEFENDANT WILLIAM ALSUP is now contemplating jail time for Plaintiff KAMATH, and placing her on a no-fly zone. DEFENDANT WILLIAM ALSUP is contemplating GARNISHING WAGES of an ATTORNEY based on DEFENDANT WILLIAM ALSUP's RACIAL and GENDER ABUSE.

151. Defendant WILLIAM ALSUP does not have absolute judicial immunity for acts outside ministerial duties as a judicial officer. DEFENDANT WILLIAM ALSUP made comments differentiating between a white, female attorney, while calling PLAINTIFF "unprofessional" *inter alia*. Defendant WILLIAM ALSUP's discrimination in preventing generational wealth and awardation of wealth to immigrant, sole proprietor, PLAINTIFF RESHMA KAMATH

AMENDED-COMPLAINT

RESHMA KAMATH

stems from Defendant WILLIAM ALSUP's anti-INDIA, HINDU PHOBIA, and anti-INDIAN women. Particularly, PLAINTIFF RESHMA KAMATH is a non-beef-eating, SOUTH INDIAN immigrant woman, who is the only counsel in her law firm. Defendant WILLIAM ALSUP has not grown up around any Indians, and/or cannot boast of close friendships growing up in high-school/college with Indians, at least not with Indian women.

152.  Defendant WILLIAM ALSUP's discrimination based on awarding attorneys' fees based on the color of the skin, gender identity, and racial/ethnic/cultural identity; and, DEFENDANT WILLIAM ALSUP in using law as a PRE-TEXT [ even DEFENDANT ALSUP falsifying the law ] is ARBITRARY and CAPRICIOUS.

153.  This is not a bygone era – racial and ethnic abuse is witnessed each and every day with countless victims who're immigrants, and people with tanner/darker skin tones in the United States of America.

154.  In 2023, during a settlement conference, DEFENDANT THOMAS HIXSON ogled at the breasts of RESHMA KAMATH.

155.  In 2023, during a settlement conference, DEFENDANT THOMAS HIXSON had a bruised ego when RESHMA KAMATH continued to speak to her client, about the state case that ran concurrently with the federal case.

156.  DEFENDANT THOMAS HIXSON had insinuated comments of "slut" about PLAINTIFF RESHMA KAMATH

157.  DEFENDANT THOMAS HIXSON even made comments that PLAINTIFF RESHMA KAMATH was "sleeping" with and were lovers with her client. This includes communications with JUDGE ALSUP.

158.  DEFENDANT THOMAS HIXSON is a state actor working in the federal court under ARTICLE III standing

159.  DEFENDANT THOMAS HIXSON does not have absolute judicial immunity for acts outside

AMENDED-COMPLAINT

RESHMA KAMATH

ministerial duties as a judicial officer.

160. DEFENDANT WILLIAM ALSUP, DEFENDANT THOMAS HIXSON and DEFENDANT JAMES LI must each pay monetary damages to PLAINTIFF RESHMA KAMATH for damages in the amount exceeding seventy-five thousand dollars [ $75,000 ], specifically, $16.50 million dollars.

## IV.   GENDER DISCRIMINATION UNDER 42 U.S.C. SECTION 1983; [AGAINST ANY AND ALL DEFENDANTS]

161. The case had no references to "India," and DEFENDANT WILLIAM ALSUP's comment was only intended to be a racial/ethnic/cultural/religious and demeaning comment to PLAINTIFF RESHMA KAMATH.

162. Defendant WILLIAM ALSUP allowed the assault and abuse of PLAINTIFF RESHMA KAMATH in his courtroom during the trial.

163. Defendant ALSUP is a state actor working in the federal court under ARTICLE III standing.

164. Defendant ALSUP does not have absolute judicial immunity for acts outside ministerial duties as a judicial officer.

165. Defendant ALSUP's "SNAFU", "OVERSIGHT", "UNPROFESSIONAL", *inter alia*, comments are grounded in racial and gender animus towards Indian and Indian-American women.

166. Defendant ALSUP failed to conduct proper investigation of his staff such as failures and negligence of DEFENDANT MEULEMAN and DEFENDANT MAHER – both White women.

167. In 2023, during a settlement conference, DEFENDANT THOMAS HIXSON ogled at the breasts of RESHMA KAMATH.

168. In 2023, during a settlement conference, DEFENDANT THOMAS HIXSON had a bruised ego when RESHMA KAMATH continued to speak to her client about the state case that ran

AMENDED-COMPLAINT

RESHMA KAMATH

concurrently with the federal case.

169. DEFENDANT THOMAS HIXSON had insinuated comments of "slut" to PLAINTIFF RESHMA KAMATH.

170. DEFENDANT THOMAS HIXSON even made comments that PLAINTIFF RESHMA KAMATH was "sleeping" with and were lovers with her client. This includes communications with JUDGE ALSUP.

171. DEFENDANT THOMAS HIXSON is a state actor working in the federal court under ARTICLE III standing.

172. DEFENDANT THOMAS HIXSON does not have absolute judicial immunity for acts outside ministerial duties as a judicial officer.

173. DEFENDANTS must each pay monetary damages to PLAINTIFF RESHMA KAMATH for damages in the amount exceeding seventy-five thousand dollars [ $75,000 ], specifically, $1.50 million dollars.

## V. DECLARATORY RELIEF;

## [AGAINST ANY AND ALL DEFENDANTS

174. PLAINTIFF RESHMA KAMATH hereby pleads, complains, alleges and incorporates via reference each and every allegation stated in the preceding paragraphs as if set forth fully herein.

175. PLAINTIFF RESHMA KAMATH has STANDING to pursue the DECLARATORY RELIEF claim against each and every DEFENDANT in this case.

176. PLAINTIFF RESHMA KAMATH alleges this case is RIPE and JUSTICIABLE.

177. PLAINTIFF RESHMA KAMATH has rights and remedies under the UNITED STATES CONSTITUTION as an individual and as a woman that are and/or will be harmed as a result of DEFENDANTS' conduct.

178. PLAINTIFF RESHMA KAMATH requests this neutral Honorable Court to declare her rights

AMENDED-COMPLAINT

RESHMA KAMATH

47

and remedies as to the DEFENDANTS.

## VI. DEFAMATION *PER SE* – LIBEL;

## [AGAINST ANY AND ALL DEFENDANTS]

179.   PLAINTIFF RESHMA KAMATH hereby pleads, complains, alleges and incorporates via reference each and every allegation stated in the preceding paragraphs as if set forth fully herein.

180.   DEFENDANT JAMES made several perjurious and defamatory comments about PLAINTIFF RESHMA KAMATH in writing that were memorialized in permanency upon his writing.

181.   DEFENDANT JAMES' comments have had and continue to have IRREPARABLE DAMAGE to the professional and personal reputation of PLAINTIFF RESHMA KAMATH.

182.   DEFENDANT JAMES' comments were made under oath and under penalty of perjury.

183.   This caused DEFENDANT HIXSON and DEFENDANT ALSUP to act in a certain way injurious to the professional and personal reputation of PLAINTIFF RESHMA KAMATH.

184.   DEFENDANT WILLIAM ALSUP had made comments about PLAINTIFF RESHMA KAMATH such as atleast "unprofessional" in writing with no basis, *inter alia*. However, to a white female attorney who barely did any work during trial, DEFENDANT WILLIAM ALSUP had a preconceived comment about "good attorney" at the pretrial conference. Both statements are recorded permanently in writing.

185.   The comments had permanency, because they are in writing.

186.   Each publication and repetition of the defamatory and slanderous comments are each a single act of defamation.

187.   DEFENDANT WILLIAM ALSUP and THOMAS HIXSON does not have absolute judicial immunity for acts outside ministerial duties as a judicial officer.

188.   DEFENDANTS must each pay monetary damages to PLAINTIFF RESHMA KAMATH for damages in the amount exceeding seventy-five thousand dollars [ $75,000 ], specifically,

AMENDED-COMPLAINT

$16.50 million dollars.

## VII. NEGLIGENT HIRING, RETENTION, SUPERVISION, AND TRAINING

## [AGAINST ANY AND ALL DEFENDANTS]

189.   PLAINTIFF RESHMA KAMATH hereby pleads, complains, alleges and incorporates via reference each and every allegation stated in the preceding paragraphs as if set forth fully herein.

190.   DEFENDANTS have hired and retained incompetent and negligent clerks, such as DEFENDANT MEULMAN, MAHER, and the clerks at the DEFENDANT NINTH CIRCUIT COURT OF APPEALS.

191.   DEFENDANTS knew and should have known their incompetent and negligent clerks were not educated and trained in the law; were prone to making mistakes on the court docket; were instrumental in falsifying evidence and aiding White attorneys to tamper with evidence boxes; and in the clerks failing to monitor their court case dockets.

192.   DEFENDANTS knew and should have known their incompetent and negligent clerks would cause harm to PLAINTIFF RESHMA KAMATH, and pose as a substantial risk to PLAINTIFF RESHMA KAMATH.

193.   For each of the DEFENDANTS' conduct, negligently and caused with reckless disregard, and omissions, PLAINTIFF RESHMA KAMATH must be awarded damages specified in the prayer for relief below.

## PRAYER FOR RELIEF

I.   That the HONORABLE COURT award over $16.50 million in damages to PLAINTIFF.

II.   That the HONORABLE COURT award INJUNCTIVE RELIEF immediately in any and all temporary and permanent injunctive relief against DEFENDANTS [until PLAINTIFF RESHMA KAMATH proves this pursuant to evidence at trial for this complaint]. [THIS IS NOT MOOT]

AMENDED-COMPLAINT



A. THAT ELEVENTH AMENDMENT AND JUDICIAL IMMUNITY DOES NOT APPLY TO ANY AND ALL ACTS AND OMMISSIONS IN THIS ABOVE-STATED AMENDED COMPLAINT.

III. That the HONORABLE COURT award DECLARATORY RELIEF in the rights and remedies of PLAINTIFF RESHMA KAMATH.

IV. That the HONORABLE COURT award damages in the amount of $1.50 million in damages for EACH AND EVERY CAUSE OF ACTION individually, collectively, jointly and severally, against each DEFENDANT [according to proof at trial].

V. That the HONORABLE COURT award ACTUAL, GENERAL, SPECIAL, PROXIMATE, CONSEQUENTIAL, and EXPECTANCY damages in the amount of $1.50 million in damages for EACH AND EVERY CAUSE OF ACTION individually, collectively, jointly and severally, against each DEFENDANT [according to proof at trial].

VI. That the HONORABLE COURT award TREBLE and PUNITIVE damages in the amount of $1.50 million in damages for EACH AND EVERY CAUSE OF ACTION individually, collectively, jointly and severally, against each DEFENDANT [according to proof at trial].

VII. That the HONORABLE COURT award REASONABLE ATTORNEYS' FEES AND COSTS.

VIII. That the HONORABLE COURT award PRE-AND POST-JUDGMENT INTEREST, HEREIN; and,

IX. That the HONORABLE COURT grant the DEMAND FOR JURY TRIAL on EACH AND EVERY CAUSE OF ACTION.

DATED: APRIL 30, 2024

*/S/ Reshma Kamath*

RESHMA KAMATH
PLAINTIFF, *IN PROPRIA PERSONA*

AMENDED-COMPLAINT

RESHMA KAMATH

50